**GENERAL FOODS CORPORATION**

v.

**UNITED STATES of America et al.**

**Civ. No. Y–77–2106.**

United States District Court,
D. Maryland.

March 21, 1978.

---

**3.** *Compare* note 1 *supra with* note 2 *supra.*

Paul D. Bekman, Baltimore, Md., for plaintiff.

James W. Constable, Richard D. Bennett, Asst. U. S. Atty., Baltimore, Md., David V. Hutchinson, U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

Plaintiff, General Foods Corporation, seeks to recover damages from the defendants, Penn Central Transportation Company and the United States, arising out of the allision of the SS YORKMAR with the Penn Central Railroad Bridge over the Chesapeake and Delaware Canal on February 2, 1973. The complaint states that plaintiff owned and operated a manufacturing plant in Dover, Delaware, and that the bridge is the sole means of railroad transportation for goods to and from its plant. During the time the bridge was out of commission, plaintiff suffered injury in that it was forced to ship goods by truck, involving additional inspection, shipping and handling costs in the amount of $167,941.00 and other unliquidated damages.

The joint and several negligence of the defendants in the events of February 2, 1973, has already been established. *Hogge v. SS YORKMAR*, 434 F.Supp. 715 (D.Md. 1977). Therefore, the only issue is the defendants' liability to this plaintiff for damages.

The United States has moved to dismiss the complaint pursuant to Rule 12 F.R. Civ.P. on the grounds that plaintiff fails to state a claim upon which relief can be granted. Defendant contends that the economic losses suffered by the plaintiff in conducting its business, even if proven, are not recoverable damages as a matter of law. The motion must be granted.

By the well-established general rule, a plaintiff who has suffered only the loss of an economic advantage due to negligence has not been injured in a manner which is legally cognizable or compensable. No cause of action will lie for negligent, as opposed to intentional, interference with contract or business rights. *E. g.*, Prosser,

Law of Torts, pp. 938, 952 (4th Ed. 1971). Courts which have addressed this issue have repeatedly expressed concern that a contrary rule would open the door to virtually limitless suits, often of a highly speculative and remote nature. Such suits would expose the negligent defendant to a severe penalty, and would produce serious problems in litigation, particularly in the areas of proof and apportionment of damages. *E. g.,* Prosser, at 940; *Union Oil Company v. Oppen,* 501 F.2d 558 (9th Cir. 1974); *Petition of Kinsman Transit Co.,* 388 F.2d 821 (2nd Cir. 1968).

In *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), the plaintiffs, who had time chartered a vessel, suffered economic loss when they were deprived of the use of the vessel as a result of defendants' negligence. Defendants were contractually responsible to the vessel owner to perform periodic servicing. When they negligently broke a propeller, the vessel was laid up. After first holding that plaintiffs could not sue through the owner's service contract as third party beneficiaries, the Court rejected tort liability, stating:

> But as there was a tortious damage to a chattel it is sought to connect the claim of the respondents with that in some way. The damage was material to them only as it caused the delay in making the repairs, and that delay would be a wrong to no one except for the petitioner's contract with the owners. The injury to the propeller was no wrong to the respondents but only to those to whom it belonged. But suppose that the respondent's loss flowed directly from that source. Their loss arose only through their contract with the owners—and while intentionally to bring about a breach of contract may give rise to a cause of action (citation omitted), no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. (Citation omitted).

The law does not spread its protection so far.

*Id.* at 308–09, 48 S.Ct. at 135.

The non-compensable loss in *Robins* must be distinguished from cases where one who has suffered a compensable property loss can also recover consequential damages.

In *AKTIESELSKABET CUZO v. THE SUCARSECO,* 294 U.S. 394, 55 S.Ct. 467, 79 L.Ed. 942 (1935), two vessels collided. The cargo owners sued the non-carrying vessel to recover expenses incurred to preserve the cargo, as well as for damages to the cargo itself. The Court held that the expenses were a compensable loss, since a cargo owner's right to recover for all damages as to cargo is well established in maritime law. Agreements between the cargo owner and the owner of the carrying vessel to apportion costs between them in case of collision do not undo this direct liability of the non-carrying vessel to the cargo owner. Specifically distinguishing *Robins,* the Court stated:

> This is not a case of an attempt, by reason of "a tort to the person or property of one man", to make the tort-feasor liable to another "merely because the injured person was under a contract with that other, unknown to the doer of the wrong." (Citations omitted). Here, cargo as well as ship was placed in jeopardy. That jeopardy was due in part to the negligence of the vessel against which the claim is made. The fact that the vessel and the cargo under the "Jason clause" bear their proportionate shares of the expenses gives Sucarseco no ground for a contention that the expenses themselves, or the share that cargo bears, were not occasioned directly by the tort.

294 U.S. at 404–05, 55 S.Ct. at 471.

In *Petition of Canal Barge Co.,* 323 F.Supp. 805, 823 (N.D.Miss.1971), the negligent operation of a towboat caused damage to a bridge. The bridge owner was allowed to recover revenue and increased expenses. However, the case does not suggest that users of the bridge, who might have been forced to reroute, could collect damages for their additional expenditures.

In short, plaintiff's citation of the above cases does not advance his own claim, since they are clearly distinguishable. The cases are not inconsistent with *Robins* and do not overrule it.

Defendant contends that *Robins* controls the result in the instant case. Plaintiff claims it is inapplicable because, unlike *Robins,* the plaintiff here has "no contract or other existing agreement" with either defendant; and because these defendants knew that plaintiff and other businesses on the Delmarva Peninsula could only ship by rail by using the C&D Canal bridge. In *Robins,* the defendant was unaware of the contract between owner and charterer of the vessel.

The fact that plaintiff has no contract with defendant does not strengthen the claim for damages. The plaintiff in *Robins* sought to use the contract as a basis for an exception to the general rule of no recovery for pure economic loss. It is implicit in *Robins* that, without the contract, there would have been no possible basis for liability. General Foods' argument that it is different from the plaintiff in *Robins* simply places the loss squarely within the general rule against damages.

The consequences of imposing liability in a *Robins* situation would be far less serious for negligent defendants than in the present case. Critics have pointed out that a different result in *Robins* would only cause the defendant to pay the charterer damages which would have been recoverable by an owner who was using the vessel himself. F. James, in *Limitations on Liability for Economic Loss Caused by Negligence: A Pragmatic Appraisal,* 25 Vanderbilt Law Review (1972) stated:

> If the defendant were liable to the charterer instead, it would not be a wide and open-ended liability, but a finite one that the tortfeasor or his liability insurer would expect to pay under frequently occurring circumstances. There seems to be no valid reason why defendant should escape this ordinary item of damages just because the loss in this case happened to be suffered by one who had no proprietary interest in the ship.

*Id.* at 55–56. In short, the position of the present plaintiff is more remote than the plaintiff in *Robins.* To allow General Foods to recover its transportation expenses would invoke a "wide and open-ended liability".

Plaintiff argues that it is a foreseeable plaintiff. This may well be correct. It appears reasonable to believe that the operators of a railroad bridge are aware that it is used for business shipments. However, even if General Foods is a foreseeable plaintiff, recovery will be denied.

While foreseeability is one factor in assessing liability, it is not necessarily determinative. In *Petition of Kinsman Transit Co.,* 388 F.2d 821 (2nd Cir. 1968), claims very much like those in the instant case were held noncompensable. After a bizarre combination of occurrences, two vessels struck a bridge. The combined wreckage blocked the river and caused an extensive ice jam with flooding upstream. Plaintiff Cargill, Inc., had wheat stored aboard a vessel berthed below the bridge when the accident occurred. Because of the accident, Cargill could not move the vessel to its grain elevators for unloading, and had to purchase replacement wheat. The commissioner appointed by the district judge awarded Cargill damages for extra transportation and storage costs. Plaintiff Cargo Carriers, Inc., was unloading when the incident occurred. Although the cargo was not damaged, expenses were incurred for special equipment to complete the unloading under the circumstances. The commissioner awarded damages for this expense. The appellate court relied on normal tort principles of proximate cause, rather than the doctrine of negligent interference, in holding that the injuries were too "remote" and "indirect" a consequence of defendants' negligence to justify recovery.

The court found that the plaintiff's injuries were foreseeable. After finding that the damming of the river was foreseeable, the court stated:

> It would seem to follow from this that it was foreseeable that transportation on

the river would be disrupted and that some would incur expenses because of the need to find alternative routes of transportation or substitutes for goods delayed by the disaster.

*Id.* at 824. However, expressing concern that there be a meaningful limiting principle on liability for negligence, the court stated:

> The instant claims occurred only because the downed bridge made it impossible to move traffic along the river. Under all the circumstances of this case, we hold that the connection between the defendants' negligence and the claimants' damages is too tenuous and remote to permit recovery. "The law does not spread its protection so far."

*Id.* at 825.

In *Kaiser Aluminum & Chemical Corp. v. Marshland Dredging Co., Inc.,* 455 F.2d 957 (5th Cir. 1972), the defendant broke a gas pipeline of Sugar Bowl Gas Company while cleaning a canal. As a result, Kaiser lost gas supplies from Sugar Bowl, and suffered losses from a business shutdown. The court held that since the interference with the gas contract was only negligent, recovery was precluded as a matter of law.

In *Federal Commerce & Navigation Co., Ltd. v. THE M/V MARATHONIAN,* 392 F.Supp. 908 (S.D.N.Y.1975), a time charterer lost the use of the chartered vessel due to a collision. Relying on *Robins,* the court found that the pecuniary losses were not recoverable.

A right to recover for pure economic loss in negligence has been allowed in limited situations where there is "some special relation between the parties." Examples are: the failure of a telegraph company to deliver a message, causing a contract to be lost; failure to perform a promise to procure insurance; negligent preparation of a will causing loss to the intended beneficiaries. Prosser at 952. Akin to these situations are recoveries against defendants in certain occupations, including bankers, attorneys, accountants, architects, stock brokers. *Union Oil Company v. Oppen, supra,* at 566, and cases cited therein.

The facts of the present case are not analogous to any of the recognized exceptions. Plaintiff argues that the possibility of a "special relationship" between it and defendant is a matter for proof. However, plaintiff, by its own allegations, has no contract or agreement of any kind with either defendant. Further, it is difficult to imagine how a "special relation", in any sense in which that term has been employed in the case law, could be said to exist between plaintiff and the Army Corps of Engineers.

In *Union Oil Company v. Oppen, supra,* commercial fishermen sued oil companies for damages to their business when aquatic life was diminished as a result of an oil spill in Santa Barbara in 1969. The court allowed recovery, citing the fact that the injury flowed directly from the escaping oil, a strong public policy against environmental injury, and the protected position long accorded to fishermen in maritime law. However, the court strongly upheld the general policy of not allowing recovery for purely economic losses, stating:

> . . . our holding in this case does not open the door to claims that may be asserted by those, other than commercial fishermen, whose economic or personal affairs were discommoded by the oil spill of January 28, 1969. The general rule urged upon us by defendant [of no recovery for purely economic loss] has a legitimate sphere within which to operate. Nothing said in this opinion is intended to suggest, for example, that every decline in the general commercial activity of every business in the Santa Barbara area following the occurrences of 1969 constitutes a legally cognizable injury for which the defendants may be responsible. The plaintiffs in the present action lawfully and directly make use of a resource of the sea, *viz,* its fish, in the ordinary course of their business. This type of use is entitled to protection from negligent conduct by the defendants in their drilling operations. Both the plaintiffs and defendants conduct their business operations away from land and in, on and under the sea. Both must carry on their

commercial enterprises in a reasonably prudent manner. Neither should be permitted negligently to inflict commercial injury on the other. We decide no more than this.

501 F.2d at 570–71.

Two isolated cases impose liability upon vessels which obstruct waterways toward other vessels whose passage is thereby delayed. *In Re Lyra Shipping Co., Ltd.,* 360 F.Supp. 1188 (E.D.La.1973), involved claims growing out of an obstruction which occurred when the vessel struck canal locks. The court allowed ships already committed to passage through the locks to collect damages resulting from the delay. The court did not reach the question of damages for vessels not already in the locks when the incident occurred. *In Re China Union Lines, Ltd.,* 285 F.Supp. 426 (S.D.Tex.1967), also involved the obstruction of a waterway. The court found a duty to other users, and awarded damages for the delays to other vessels during the two days when the waterway was blocked.

These two cases are inconsistent with the greater weight of authority, and have not been followed. Further, even these expansive cases do not impose liability which is as far reaching as that which would be imposed in the present case. The time period was very short in *In Re China,* and the number of vessels using the locks in *In Re Lyra* was finite. Imposition of liability in the present case involves precisely the limitless type of liability which courts have consistently considered excessive for negligence. Neither the case law nor the sound policy considerations on which the decisions are bottomed support the plaintiff's claims for its economic losses. Even assuming General Foods is a foreseeable plaintiff, "the law does not spread its protection so far."

Accordingly, it is this 21st day of March, 1978, by the United States District Court for the District of Maryland, ORDERED:

That the motion of the defendant United States to dismiss the complaint for failure to state a claim upon which relief can be granted be, and the same is, hereby GRANTED.