**In the Matter of the Complaint of MARINE NAVIGATION SULPHUR CARRIERS, INC. and Marine Transport Lines, Inc. As Owners of the S/T MARINE FLORIDIAN for Exoneration from or Limitation of Liability.**

Civ. A. No. 77–220–N(c).

United States District Court,
E. D. Virginia,
Norfolk Division.

March 27, 1980.

Philip N. Davey, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., for plaintiffs.

Anthony F. Troy, Atty. Gen. of Va., Walter A. McFarlane, Deputy Atty. Gen., John J. Beall, Jr., Asst. Atty. Gen., Richmond, Va., Hugh S. Meredith, Morton H. Clark, Vandeventer, Black, Meredith & Martin, Norfolk, Va., for Com. of Va.

Harrison, Aldridge & Pigeon, Hopewell, Va., for R. W. Davis & Son Lumber Co., Inc., Plant Food Products, Inc., Anthony H. Moogalain, t/a Airport Grocery, Frank O. Irvine, etc., Malcolm Jamieson, t/a Berkeley Plantation, C. Hill Carter, Jr. t/a Shirley Plantation and Bartlett Oil Co., Inc.

Breit, Rutter & Montagna, Norfolk, Va., for Lawrence B. Robertson et al. and Ira Carter.

Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., for Lawrence B. Robertson et al.

Goddin, Major, Schubert & Hyman, Richmond, Va., for Terminal Stevedores, Inc. and Richmond Waterfront Terminals, Inc.

Claude C. Farmer, Jr., Thomas B. Hoover, Sandston, Va., for Chemical Carrier Corp. of Va.

Robert Epstein, Norfolk, Va., for Frederick O'Neal and William Wiggins.

Kaufman, Oberndorfer & Spianhour and Jett, Berkley & Furr, Norfolk, Va., for Lone Star Industries, Inc.

Eliades & Robertson, Hopewell, Va., for Henry C. Frazier.

Florence, Gordon & Brown, Richmond, Va., for Groome Transportation, Inc.

John H. Klein, Breit, Rutter & Montagna, Norfolk, Va., for Kinsley Smith.

Peter W. Rowe, Stackhouse, Weinberg & Stewart, Norfolk, Va., for Allied Towing Corp.

## MEMORANDUM ORDER

KELLAM, District Judge.

The plaintiffs have moved this Court, pursuant to Rules 12 and 56[1] of the Federal Rules of Civil Procedure, to dismiss the claims presented by certain defendant-claimants. On February 24, 1977, the S/T

MARINE FLORIDIAN collided with the Benjamin Harrison Memorial Bridge on the James River near Hopewell, Virginia. The MARINE FLORIDIAN is owned by plaintiff Marine Navigation Sulphur Carriers, Inc. and bareboat chartered to and operated by plaintiff Marine Transport Lines, Inc. (collectively MTL). The Benjamin Harrison Memorial Bridge is owned by the Commonwealth of Virginia. By Memorandum Order of August 21, 1978, this Court found the collision to have been caused by the unseaworthiness of the vessel and the negligence of its owners and operators. MTL's petition for exoneration from or limitation of liability was therefore denied, with direction that further proceedings be conducted to consider the various damage claims. On November 16, 1979, the judgment of this Court was affirmed by the Court of Appeals for the Fourth Circuit. (Appeal No. 78–1788).

Numerous and varied claims for damages arising out of the collision were thereupon timely filed or otherwise accepted by the Court. Such claims included claims of the Commonwealth of Virginia for property damage to its bridge, personal injury claims by the S/T MARINE FLORIDIAN crew and others, personal property damage claims for the loss of automobiles caused to fall into the River, and various indirect and consequential claims for business interruption and losses. The plaintiffs' motion to dismiss concerns the claims of those who allege damages arising out of the temporary inability to traverse the Benjamin Harrison Memorial Bridge or to navigate the underlying James River.

Each of the claims sought to be dismissed by plaintiffs' motion may be summarized as follows:

(a) Allied Towing Corporation, at all times relevant, was the owner or charterer

---

1. Claimant Allied Towing Corporation argues on brief that Rule 56 could not be the basis for dismissal since the plaintiffs' motion is on the bare allegations of the pleadings. However, Rule 56(b) provides that a party against whom a claim is asserted "may, at any time, move *with or without supporting affidavits* for a summary judgment in his favor . . . ." (em-phasis added). A motion for summary judgment may properly be decided on the basis of the pleadings alone. *Marsh v. United States,* 48 F.R.D. 315, 317 (W.D.Va.1969). Allegations in opposing pleadings which show that a factual dispute exists will prevent the award of summary judgment so long as neither side supports its position with affidavits. *Id.*

of tugs and barges used to perform towage service or to transport cargo on the James River, both upstream and downstream from the Benjamin Harrison Memorial Bridge. Allied claims $82,320.30 for added business expense, business interruption, loss of use and delay of its owned or chartered vessels, and loss of trade because of the inability of its owned or chartered tugs and barges to utilize the James River. (Claim and Answer filed June 6, 1977).

(b) Athenian Shipping Corporation is the owner of the Greek motor vessel PATRIS, which was moored in Norfolk, Virginia at the time of the collision. The PATRIS was awaiting delivery by barge of a partial cargo of ammonium sulphate from Hopewell, Virginia. The barge could not come to Norfolk when the River was closed to traffic, causing the PATRIS to sail from Norfolk with an incomplete cargo and a loss of approximately $20,000.00 in freight revenues. (Claim filed July 26, 1977).

(c) Richmond Waterfront Terminals, Incorporated, is the operator of the Deepwater Terminal, which is located on the James River in the City of Richmond. There, it engages in the loading, unloading, shipping, receiving and storage of varied cargo transported to and from its facility by ships navigating the James River. Richmond Waterfront Terminals claims $35,206.75 as a result of the inability of certain ships to reach its facilities due to the obstruction of the River. (Claim filed July 14, 1977).

(d) Terminal Stevedores, Inc., is engaged in the business of stevedoring at the Deepwater Terminal in the City of Richmond. It claims $75,100.53 as a result of the inability of certain ships to reach its facilities due to the obstruction of the James River. (Claim filed July 14, 1977).

(e) Lone Star Industries owns and operates quarries on both sides of the James River upstream from the Benjamin Harrison Memorial Bridge. The Company also owns certain plants in the Hampton Roads area for the manufacture of concrete products, aggregate ready mix concrete, and block and pipe. Lone Star uses a fleet of tugs and barges, which it owns, to transport stone, sand and gravel from its quarries on the James River to its various plants in the Hampton Roads area. The tugs and barges are also used to transport stone, sand and gravel for sale to customers in original form. Lone Star claims $400,000.00 for added business expense, business interruption, and loss of trade because of the inability of its fleet to utilize the James River. (Claim and Answer filed July 27, 1977).

(f) Frank O. Irvine, trading as Tri-City Plumbing and Heating Company of Petersburg, Virginia, is a plumbing, heating and building contractor. He claims $350,000.00 because the closing of the Benjamin Harrison Bridge limited his access to markets on the north side of the James River, and limited his access to sales customers, products and raw materials. He claims that he therefore sustained increased costs and a loss of trade and profit. (Amended Claim filed September 29, 1977. *See also* Claim and Answer filed July 28, 1977).

(g) R. W. Davis & Son Lumber Company, Inc. of Sutherland, Virginia, is a timber buyer and lumber manufacturer. The Company claims $100,000.00 for the increased costs and loss of trade and profit resulting from its limited access to the markets on the north side of the James River and limited access to sales customers, products and raw materials. (Amended Claim filed September 29, 1977. *See also* Claim and Answer filed April 8, 1977).

(h) Plant Food Products, Inc., of Hopewell, Virginia, is a manufacturer and seller of agricultural goods and services. The Company claims $600,000.00 for the increased costs and loss of trade and profit resulting from its limited access to markets on the north side of the James River and limited access to sales customers, products and raw materials. (Amended Claim filed September 29, 1977. *See also* Claim and Answer filed April 8, 1977).

(i) Bartlett Oil Company, Inc. of Hopewell, Virginia, is a seller of petroleum products, goods and services. The Company claims $100,000.00 for the increased costs and loss of trade and profit resulting from its limited access to markets on the north

side of the James River and limited access to sales customers, products and property. (Amended Claim filed September 29, 1977. *See also* Claim and Answer filed August 30, 1977).

(j) Groome Transportation, Incorporated is a motor vehicle common carrier providing passenger service in Virginia between Byrd Airport, Hopewell, Fort Lee, and Petersburg by way of State Route 5 and the Benjamin Harrison Memorial Bridge. Air freight service by truck was also regularly provided by routes and schedules utilizing the bridge. Groome Transportation holds a Certificate of Public Convenience and Necessity issued by the State Corporation Commission of Virginia, dated September 28, 1966. The temporary inability to traverse the bridge forced Groome to reroute its motor vehicles by way of Interstate 95 and State Route 10, resulting in travel that was longer in distance and time of operation. Groome therefore claims $27,700.00 for additional operating costs, including tolls, gasoline, oil, depreciation, wages of drivers, and loss of trade due to decreased efficiency of service. (Claim and Answer filed September 12, 1977).

(k) Anthony H. Moogalian is a retail grocer and gasoline service station operator trading as Airport Grocery in Hopewell, Virginia. He claims $150,000.00 for the increased costs and loss of trade and profit resulting from limited access to markets on the north side of the James River and limited access to sales customers and products. (Amended Claim filed September 29, 1977. *See also* Claim and Answer filed April 8, 1977).

(l) Malcolm Jamieson is a farmer, nurseryman, and tourist and travel proprietor who owns and trades as the Berkeley Plantation of Charles City County, Virginia. He claims that the temporary closure of the Benjamin Harrison Memorial Bridge limited access to his historic Eighteenth Century house and plantation, resulting in damages of $50,000.00 for the increased costs and loss of trade and profit. (Amended Claim filed September 29, 1977. *See also* Claim and Answer filed August 30, 1977).

(m) C. Hill Carter, Jr. is a farmer and a travel and tourist industry proprietor who owns and trades as the Shirley Plantation of Charles City County, Virginia. He claims that the temporary closure of the Benjamin Harrison Memorial Bridge limited access to his historic Eighteenth Century house and plantation, resulting in damages of $50,000.00 for the increased costs and loss of trade and profit. (Amended Claim filed September 29, 1977. *See also* Claim and Answer filed August 30, 1977).

(n) Chemical Carrier Corporation is engaged in the delivery of chemicals throughout Virginia, contracting principally with the Allied Chemical Corporation. Carrier's contracts with Allied Chemical consist of transporting chemicals to locations designated by Allied Chemical. The crossing of the James River by way of the Benjamin Harrison Memorial Bridge provides the closest connection between Carrier's place of business in eastern Henrico County, Virginia, and Allied Chemical's plant in Hopewell, Virginia. The next closest crossing of the James River available to Carrier was the Interstate Route 95 bridge in Richmond, Virginia. Carrier claims $60,000.00 for the increased costs of travel by the longer route and for the inability to deliver chemicals in a prompt and efficient manner. (Claim filed July 26, 1977).

I.

We commence with the admonition that on a motion for summary judgment the inferences to be drawn from the facts contained in the record "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 944, 8 L.Ed.2d 176 (1962). Furthermore, summary judgment is inappropriate "even where there is no dispute as to the evidentiary facts but only as to the conclusions to be drawn therefrom." *Charbonneges de France v. Smith,* 597 F.2d 406 (4th Cir. 1979). The burden is on the moving party to show there is no genuine issue as to any material fact and that he is entitled to summary judgment as a matter of law.

*Johns Hopkins University v. Hutton*, 488 F.2d 912 (4th Cir. 1973), *cert. denied*, 416 U.S. 916, 94 S.Ct. 1623, 40 L.Ed.2d 118 (1974). This principle is to be strictly applied so as to insure that no factual issue or reasonable inference therefrom is determined except after a trial. *Tunstall v. Brotherhood of Locomotive F & E*, 69 F.Supp. 826, 829 (E.D.Va.1946), *aff'd* 163 F.2d 289 (4th Cir.), *cert. denied* 332 U.S. 841, 68 S.Ct. 262, 92 L.Ed. 413 (1947). *See also Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

## II.

The basis of the plaintiffs' motion to dismiss the various economic damage claims is that they are too remote to be compensable under the law. In response, the various claimants argue that their damages were foreseeable and not so remote as to preclude recovery. It will be assumed for purposes of this motion that all of the allegations in the claims sought to be dismissed are true.

## III.

■ The various claims at issue here all allege indirect harm in the nature of the interference of contractual obligations, the loss of business expectancies, or the added costs of doing business. None of these claimants allege any physical damage to their property or persons.

Accepting claimants' allegations as true for purposes of this motion, it is unquestioned that there was a "causation in fact," such that claimants' economic injuries would not have occurred but for the allision of plaintiffs' vessel with the Benjamin Harrison Memorial Bridge. However, the law of torts has traditionally required not only that the alleged act of negligence be a "cause in fact" of the resulting injury, but also that the act constitute the proximate or legal cause of the injury. *See generally* 57 Am.Jur.2d, *Negligence*, § 172 *et seq.* and

cases cited therein. Inherent in the concept of proximate or legal cause is the recognized need to limit the compensability of indirect and remote consequences of the negligent act:

> Numerous principles have been suggested to determine the point at which a defendant should no longer be held legally responsible for damage caused "in fact" by his negligence. Such limiting principles must exist in any system of jurisprudence for cause and effect succeed one another with the same certainty that night follows day and the consequences of the simplest act may be traced over an ever-widening canvas with the passage of time.

*Petition of Kinsman Transit Co.*, 388 F.2d 821 (2d Cir. 1968), *aff'g* 1964 A.M.C. 2716 (W.D.N.Y.1964). (citations omitted).

With few exceptions,[2] the courts have generally held that a person who suffers only an indirect economic loss based on business expectations may not recover damages against a tortfeasor who prevents passage on a shipping lane or on a land road. One case factually similar to the instant case is that of *Petition of Kinsman Transit Co.*, 388 F.2d 821 (2d Cir. 1968), *aff'g* 1964 A.M.C. 2716 (W.D.N.Y.1964). In that case, one vessel broke loose from its moorings and struck a second vessel which in turn broke loose from its moorings. Both vessels drifted downstream and crashed into a bridge. The bridge collapsed and transportation on the river was disrupted for approximately two months. The Court of Appeals of the Second Circuit affirmed the dismissal of a claim that the disruption prevented a cargo owner from unloading cargo at a point above the collapsed bridge. The Court also affirmed the dismissal of the claim by a company engaged in unloading cargo that special equipment had to be rented in order to unload in the ice jam that followed the calamity. The Court recognized that the claims were such that the law should not permit recovery, whether

---

**2.** *See, e. g., In re Lyra Shipping Co.*, 360 F.Supp. 1188 (E.D.La.1973); *In re China Union Lines, Ltd.*, 285 F.Supp. 426 (S.D.Tex.1967).

analyzed in terms of foreseeability, duty, proximate cause, or remoteness:

> Neither the Gillies nor the Farr suffered any direct or immediate damage for which recovery is sought. The instant claims occurred only because the downed bridge made it impossible to move traffic along the river. Under all the circumstances of this case, we hold that the connection between the defendants' negligence and the claimants' damages is too remote to permit recovery.

*Id.* at 825.

Another illustrative case is that of *General Foods Corp. v. United States,* 448 F.Supp. 111 (D.Md.1978). An allision of a ship with a railroad bridge, which was the sole means of railroad transportation to and from plaintiff's plant, forced the plaintiff to incur added expenses by utilizing trucks to ship its goods. The District Court granted the defendants' motion to dismiss the complaint although the joint and several negligence of the defendants had already been established. The Court held that even if General Foods was a foreseeable plaintiff, "the law does not spread its protection so far." *Id.* at 116 (quoting *Robins Dry Dock and Repair Co. v. Flint,* 275 U.S. 303, 309, 48 S.Ct. 134, 135, 72 L.Ed. 290 (1927)).

Neither the Courts of this District nor the Court of Appeals of the Fourth Circuit have yet considered a case as factually similar to the present case as are *Kinsman* and *General Foods.* Nevertheless, the existing caselaw is entirely consistent with the principle that claimants are not entitled to recover damages for indirect business losses and expenses due to the public's loss of use of a highway and waterway arising out of the negligent destruction of a bridge. *See Rederi A/B Soya v. Evergreen Marine Corp.,* 1972 A.M.C. 538 (4th Cir. 1972), *aff'g* 1972 A.M.C. 1555 (E.D.Va.1971) (owner of damaged vessel entitled to recover what it would have received in charter hire had the vessel not been out of service, but time charterer not entitled to recover lost profits which it claimed); *Henderson v. Arundel Corp.,* 384 F.2d 998 (4th Cir. 1967), *aff'g* 262 F.Supp. 152 (D.Md.1966) (employees of a dredge not entitled to recover lost wages and subsistence from a ship which collided with the dredge and put it out of service for six weeks).

The Court of Appeals of the Fourth Circuit recently created an exception to the case of *Robins Dry Dock, supra,* as to whether and to what extent the time charterer of a damaged vessel may recover damages. *See Venore Transportation v. M/V Struma,* 583 F.2d 708 (4th Cir. 1978). The Court held that the time charterer could recover charter hire, but not lost profits, where there was no suspension in the payment of charter hire while the chartered vessel was being repaired. The case cannot be viewed as supporting the recovery for economic losses by the claimants in the present case, however. The Court in *Venore* cited with approval the holding in *General Foods, supra,* and stated that it did not intend to "enlarge in any way the types of damages which have been traditionally recoverable, nor the offending vessel's obligation of recompense." *Id.* at 711. The time charterer in the *Venore* situation, unlike the claimants in the present case, was considered to have a sufficient possessory interest in the vessel that was damaged to permit a limited recovery. *Id.*

## IV.

Several of the claimants have argued in opposition to plaintiffs' motion to dismiss that the damages sought are recoverable under the alternative theory of private action against a public nuisance. The damages sought to be recovered are beyond the protection of the law whether the claims are couched in terms of common law negligence or public nuisance:

> Appellant's attempt to avoid the effect of the conventional rule by couching the claim in the language of private action based on a public nuisance is unavailing. Again, the difficulty with appellant's case is that he seeks recovery for negligent interference with his business expectancies. Rephrasing the claim as a public nuisance claim does not change its essential character.

*Dick Meyers Towing Service, Inc. v. United States*, 577 F.2d 1023, 1025 n. 4 (5th Cir. 1978), *cert. denied* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

## V.

■ Claimants have furthermore argued that the damages sought are recoverable under the Rivers and Harbors Appropriation Act, 33 U.S.C. §§ 401–426m, which prohibits unauthorized obstructions of navigable waters. Even assuming for present purposes that the allision of the MARINE FLORIDIAN with the Benjamin Harrison Memorial Bridge constituted a violation of the Act, claimants' damages are not such as may be recovered. To support their position that indirect business expectancies and costs are recoverable under the Act, claimants cite two cases arising out of this District. *See River v. Richmond Metropolitan Authority*, 359 F.Supp. 611 (E.D.Va.), *aff'd*, 481 F.2d 1280 (4th Cir. 1973); *Lauritzen v. Chesapeake Bay Bridge and Tunnel District*, 259 F.Supp. 633 (E.D.Va.1966), *modified*, 404 F.2d 1001 (4th Cir. 1968). Each case is inapposite, however, as *Lauritzen* dealt with direct physical damages and *Richmond Metropolitan* dealt with equitable relief. This Court is not persuaded that damages of the type sought by claimants are recoverable under the Rivers and Harbors Appropriation Act.

## VI.

For the foregoing reasons, plaintiffs' Motion to Dismiss the enumerated claimants is hereby GRANTED.