UNITED TEXTILE WORKERS OF AMERICA, AFL–CIO, CLC and its Subordinate Local Union No. 272, Plaintiffs–Appellants,

v.

LEAR SIEGLER SEATING CORPORATION, Defendant–Appellee.

Court of Appeals of Tennessee, Eastern Section.

Nov. 8, 1990.

Application for Permission to Appeal Denied by Supreme Court Feb. 3, 1992.

Donald F. Mason, Jr., and D. Bruce Shine, Kingsport, for appellants.

James W. Harrison and William R. Seale, Morristown, for appellee.

OPINION

GODDARD, Judge.

This is an appeal by the Plaintiffs–Appellants United Textile Workers of America, AFL–CIO, CLC and its Subordinate Local Union No. 272 (UTWA), from a judgment for the Defendant–Appellee, Lear Siegler Seating Corporation (Lear), entered by the Chancery Court of Hamblen County. The controlling question is whether the policy of the State of Tennessee should permit recovery for indirect economic loss absent personal injury or property damage.

Lear operates a factory engaged in the manufacture of springs and seats for automobiles and trucks in the East Tennessee Valley Industrial District Park in Morristown. Within the Lear property lies a fenced-in area which contains propane gas tanks. On Sunday, June 26, 1988, metal racks were stacked adjacent to and above the tanks outside the fenced area. On this day, due to heavy winds during a thunder-

storm, the racks fell and hit one of the tanks, causing it to leak. The industrial park was closed by municipal fire prevention authorities on the following day because of the danger of explosion.

The Appellants brought this action for loss of earnings of the employees for the day the park was closed, Monday, June 27, 1988, and sought to represent not only UTWA members and employees of Shelby Williams, Inc., (on behalf of the membership of Local No. 272 and all other hourly employees of Shelby Williams), but all other employees in the industrial park who lost a day's work by virtue of the propane gas tank leak. UTWA argues that Lear owed a duty to take reasonable measures in its handling and storage of propane gas to avoid the risk of economic damage to the hourly workers within the park and that Lear's failure to adhere to that standard of care constitutes a breach of the duty owed to the hourly employees. UTWA asserts that the class is so numerous that representation of all members is impractical; questions of law and fact common to the class exist; the claim of the UTWA is typical of the claims of the class, and, the UTWA will fairly and adequately protect the interest of the class.

Lear denies that any basis exists in fact and law for certification of this action as a class action. Lear argues that the UTWA is not a representative plaintiff with claims typical of any class member nor are there issues of law and fact common to the plaintiff and the class.

The UTWA is not the collective bargaining representative for any employees of any of the park's businesses with the exception of the hourly production and maintenance workers at Shelby Williams. Mr. Dean Swatzell, President of Local 272 of the UTWA and a Shelby Williams employee, testified that 83 to 85 percent of the 740 Shelby Williams' employees in the bargaining unit are members of the union. From this group of hourly production and maintenance employees, 425 employees worked at Shelby Williams on July 2, 1988.

Mr. Swatzell also acknowledged that all work at Shelby Williams Industries, Inc., is performed on a purchase-order basis rather than on a production basis. Rather than keeping an inventory of the product (a production basis of employment) from which orders are filled, Shelby Williams manufactures its product (seating for the restaurant and hotel industry) only after receiving a custom order and only that order is manufactured. Thus, work for employees is only available when a specific order for goods has been placed.

Lear claims that all hourly plant employees of Shelby Williams were given the opportunity to make up the lost wages of June 27, 1988, on Saturday, July 2, 1988, or have worked overtime on other occasions since that date making up for all production lost on June 27, 1988. Mr. Sam Ferrell, Vice–President of Shelby Williams Industries, Inc., states in his affidavit, with reference to the plants in Morristown:

Although the Shelby Williams facilities mentioned above were not able to produce furniture on June 27, 1988, we have since made up the lost production time. All of the lost production was made up during the weeks following the week of June 27–July 1 by working overtime. In fact, Shelby Williams scheduled production on Saturday, July 2, 1988 due to the shutdown on Monday, June 27. Normally, we would not have worked on that Saturday. All scheduled production was accomplished. The employees of Shelby Williams did not lose any working time as a result of the lost time on June 27, 1988.

The Chancellor held the Appellants' complaint did not state a claim upon which relief could be granted. The Court below determined Lear not liable for the lost wages of hourly employees within the industrial park, notwithstanding its negligence which proximately caused the loss, because no physical harm accompanied the economic loss. He dismissed the action and held that the question of whether Appellants are proper class representatives was rendered moot thereby.

In the case of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), the rule was ex-

pressed that liability is not legally recognized for indirect economic damages. The plaintiffs sought damages from the dry dock for the loss of use of a ship after it was damaged during its refurbishing. The dry dock negligently damaged the ship's propeller, resulting in the loss of the use of the ship for two weeks. The plaintiffs were not the owners of the ship, only time charters of it, but they sued on two theories: (1) that the plaintiffs were third party beneficiaries of a dry docking contract; and (2) negligence. The Court rejected both recovery theories and said:

> [A]s a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. See *National Savings Bank v. Ward,* 100 U.S. 195, 25 L.Ed. 621 [1879]. The law does not spread its protection so far.

275 U.S. 303, 309, 48 S.Ct. 134, 135.

In *Stevenson v. East Ohio Gas Co.,* 73 N.E.2d 200 (Ohio App.1946), an immense fire developed in the defendant's plant at which liquified natural gas was stored. The plaintiff was unable to pursue his daily work at his place of employment, located in the vicinity, due to the danger of explosions. The Court noted (at page 201):

> The plaintiff in his pleading makes no claim that he sustained any physical injury as a result of the explosion. He does not even allege that his employer, The Bishop & Babcock Co., sustained any injury. His sole claim is that he had entered into a contract of employment with The Bishop & Babcock Company which was in the nature of a property right and that he was damaged because the negligence of defendant made it impossible for him for eight days to perform his employment contract because of the danger of further explosions.

The Ohio Court sustained the dismissal of the plaintiff's action and noted the rationale for the rule that prohibits actions based solely on indirect economic loss (73 N.E.2d at page 203):

While the reason usually given for the refusal to permit recovery in this class of cases is that the damages are "indirect" or are "too remote" it is our opinion that the principal reason that has motivated the courts in denying recovery in this class of cases is that to permit recovery of damages in such cases would open the door to a mass of litigation which might very well overwhelm the courts so that in the long run while injustice might result in special cases, the ends of justice are conserved by laying down and enforcing the general rule as is so well stated by Mr. Justice Holmes in *Robins Dry Dock & Repair Co. v. Flint, supra.* Other courts have voiced concerns over the fear of fraudulent claims, limitless liability, or liability out of proportion to the defendant's fault. *People Express Airlines v. Consolidated Rail,* 100 N.J. 246, 495 A.2d 107 (1985).

In *Barber Lines A/S v. M/V Donau Maru,* 764 F.2d 50 (1985), a decision by the United States Court of Appeals, First Circuit, the Court interestingly assumed that the injury sustained *was foreseeable,* but held that controlling law prohibited any action for recovery of indirect economic harm and denied recovery. The Court, rejecting the plaintiff's contention that the rule should be abandoned as "outmoded," concluded that the general rule prohibiting recovery for indirect economic loss was still valid.

In *Aikens v. Baltimore and Ohio Railroad Co.,* 348 Pa.Super. 17, 501 A.2d 277 (1985), the Superior Court for the State of Pennsylvania justified denial of recovery for indirect economic loss on policy reasons. The plaintiffs were employees who suffered no personal injury or property damage in a train derailment which damaged their employer's plant, but due to curtailed production by their employer, lost wages. The Court affirmed dismissal of the complaint and reasoned (501 A.2d at page 279):

> Therefore, negligence harm to economic advantage alone is too remote for recovery under a negligence theory. The reason a plaintiff cannot recover stems from

the fact that the negligent actor has no knowledge of the contract or prospective relation and thus has no reason to foresee any harm to the plaintiff's interest. *See General Foods Corp. v. United States*, 448 F.Supp. 111 (D.Md.1978); *Just's, Inc. v. Arrington Construction Company*, 99 Idaho 462, 583 P.2d 997 (1978); *Stevenson v. East Ohio Gas Co.*, 73 N.E.2d 200 (Ohio App.1946).

In *Willis v. Georgia Northern Railway Co.*, 169 Ga.App. 743, 314 S.E.2d 919 (1984), eight of the defendant's railcars rolled into and damaged the Swift Independent Packing Company and the plaintiffs lost work and wages. The Georgia Court ruled (314 S.E.2d at page 919):

> Conceding that questions of fact as to the negligence of Georgia Northern remain, nevertheless we do not agree with appellants that their loss of wages—money due them solely by virtue of their employment contract with Swift—was a probable consequence of Georgia Northern's negligence. The damages sought by appellants have consistently been held too remote in nature for recovery. "A party [appellants] to a contract who is injured by reason of the failure of the other party [Swift] to comply with its terms can not recover damages for the negligent act of a third person [Georgia Northern] by which the performance of the contract was rendered impossible." *Byrd v. English*, 117 Ga. 191, 43 S.E. 419 (1902).

The Appellants urge this Court to adopt as the standard for recovery for indirect economic loss the rule formulated by the New Jersey Supreme Court in *People Express Airlines v. Consolidated Rail, supra.* In that case, an airline claimed losses due to the forced evacuation of its terminal when a railroad tank car was punctured and the chemical it was carrying ignited. Even though no property damage or personal injury occurred, the New Jersey Supreme Court determined a cause of action in negligence existed.

The Court noted that economic losses may be recovered "when they are the natural and probable consequence of a defendant's negligence in the sense that they are reasonably to be anticipated in view of defendant's capacity to have foreseen that the particular plaintiff or identifiable class of plaintiffs ... is demonstratively within the risk created by defendant's negligence." *People Express, supra.* The Court stated that "[w]hatever the original common law justifications for the physical harm rule, contemporary tort and negligence doctrine allow—indeed, impel—a more thorough consideration and searching analysis of underlying policies to determine whether a particular defendant may be liable for a plaintiff's economic losses despite the absence of any attendant physical harm." *Id.*

The New Jersey Court explored the elements of a new rule and adopted the traditional approach of foreseeability, as it relates to duty and proximate cause. It determined "[t]he more particular is the foreseeability that economic loss will be suffered by the plaintiff as a result of defendant's negligence, the more just is it that liability be imposed and recovery allowed." *Id.*

However, the *People Express* Court itself noted the contradictory and inconsistent nature of its reasoning. While stating that many similar cases would arise that could not be resolved by its decision, the Court recognized that

> some cases will present circumstances that defy the categorization here devised to circumscribe a defendant's orbit of duty, limit otherwise boundless liability and define an identifiable class of plaintiffs that may recover. In these cases, the courts will be required to draw upon notions of fairness, common sense and morality to fix the line limiting liability as a matter of public policy, rather than an uncritical application of the principle of particular foreseeability.

495 A.2d at 116.

The Appellants also rely upon *Mattingly v. Sheldon Jackson College*, 743 P.2d 356 (Alaska 1987). In that action, Sheldon Jackson College employees had negligently excavated and braced a trench, which subsequently collapsed, burying several of the

plaintiff's employees. The plaintiff contractor alleged that the college's negligent conduct resulted in loss to him of income and profits as a result of the loss of employee services. The Alaska Supreme Court, quoting *People Express* throughout the opinion, adopted a rule permitting recovery for purely economic losses.

We conclude that this Court should follow the majority rule and disallow recovery for purely economic loss absent physical injury or property damage. We find this rule rests on firm policy foundations.

The judgment below is affirmed and the cause remanded for collection of costs below. Costs of appeal are adjudged against the Appellants and their surety.

SANDERS, P.J. (E.S.), concurs.

FRANKS, J., dissents.

FRANKS, Judge, dissenting.

On the record before us, the defendant was negligent and plaintiffs were damaged as a result of defendant's negligence. The majority denies giving any consideration to plaintiffs' theory simply by mechanically applying a rule developed in other jurisdictions, which essentially denies recovery in cases of this nature either on the theory that the damages were not foreseeable or, as the United States Supreme Court in *Flint* (cited by the majority), held the "doer of the wrong" is shielded from claims of "unknown" economic loss. I dissent and, while I would disallow a class action other than for the employees of Shelby Williams, Inc., I would remand to the trial court to allow the proof to develop and then review in accord with the principles announced in *People Express Airlines v. Consolidated Rail*, 100 N.J. 246, 495 A.2d 107 (1985).

Our Supreme Court, in discussing the duty owed by a tort feasor, has observed:

> The courts and legal scholars have considered several factors in determining that a duty exists in the one situation but not in the other. Foremost among these are (1) the foreseeability, or lack thereof, by a reasonably prudent person that his or her conduct may endanger the particular plaintiff, (2) the foreseeability, or the lack thereof, that serious ... injury may result from the particular negligent conduct of the defendant, (3) the fear that vexatious suits and fraudulent claims will result if a duty is recognized, (4) the difficulty of defining liability, of drawing the line, if recovery is to be permitted to a plaintiff ... and (5) the notion that it would be unjust to expand liability for a merely negligent, as distinguished from an intentional, act....

*Shelton v. Russell Pipe & Foundry Co.*, 570 S.W.2d 861, 864 (Tenn.1978).

As to the issue of foreseeability, it is the general rule in this jurisdiction that foreseeability is to be determined by the jury. *City of Elizabethton v. Sluder*, 534 S.W.2d 115 (Tenn.1976). Nor should the fear of fraudulent claims deter recognition of an action of this nature since we have virtually unlimited discovery. The extent of economic loss is more easily established or refuted than claims for personal injuries. As to the difficulty of defining liability, courts should not shirk their responsibility in this area merely because it may, in a given case, be difficult to define the limits of liability.

Accordingly, in my opinion, the better approach would be to remand this cause and permit the trier of fact to determine the issues of fact and not invoke a dated rule which automatically bars any consideration of claims of this nature.