WIGGINS, Justice
(dissenting).
I dissent. While I agree with the majority that Annett Holdings, Inc. was not a third-party beneficiary, I cannot support the conclusion that we should bar its claim because of the economic loss rule. To understand the basis for my dissent, I believe it is first necessary to review the development of the economic loss rule in Iowa.
Iowa appeared to adopt the economic loss rule in Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp., 345 N.W.2d 124 (Iowa 1984). There, a group of Nebraska business owners sued Pittsburgh-Des Moines for purely economic loss due to negligence of Pittsburgh-Des Moines in the construction of a bridge over the Missouri River connecting Iowa and Nebraska. Neb. Innkeepers, Inc., 345 N.W.2d at 125-26. After reviewing cases with similar facts from other jurisdictions, this court barred the claims of the business owners. Id. at 126-28.
My review of the cases relied on by this court, when it decided Nebraska Innkeepers, is that in an action in which a bridge is negligently damaged, the courts generally relied on the theory that economic damages resulting from damage to the bridge are too remote to allow a recovery. See Leadfree Enters., Inc. v. U.S. Steel Corp., 711 F.2d 805, 807 (7th Cir.1983) (“ ‘[E]ven where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of public policy because: (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point’ ”) (quoting Hartridge v. State Farm Mut. Auto. Ins. Co., 86 Wis.2d 1, 271 N.W.2d 598, 602 (1978)); Petitions of Kinsman Transit Co., 388 F.2d 821, 825 (2d Cir.1968) (“Under all the circumstances of this case, we hold that the connection between the defendants’ negligence and the claimants’ damages is too tenuous and remote to permit recovery.”); In re Complaint of Marine Navigation Sulphur Carriers, Inc., 507 F.Supp. 205, 209 (E.D.Va.1980) (“Inherent in the concept of proximate or legal cause is the recognized need to limit the compensability of indirect and remote consequences of the negligent act.”); Gen. Foods Corp. v. United States, 448 F.Supp. 111, 113 (D.Md. 1978) (“Courts which have addressed this issue have repeatedly expressed concern that a contrary rule would open the door to virtually limitless suits, often of a highly speculative and remote nature.”); Rickards v. Sun Oil Co., 23 N.J. Misc. 89, 41 A.2d 267, 270 (N.J.Sup.Ct.1945) (“It is obvious that the alleged wrong was not the natural and proximate result of defendant’s negligence, and the defendant is not liable.”). In other words, these authorities hold as a matter of law any damages caused by the defendant’s negligence in damaging the bridge is not the proximate cause of the plaintiffs damages. In reality, we did not adopt the economic loss rule. We applied the proximate-eause-remoteness doctrine and called it the economic loss rule.
A few years later, this court refined its position on pure economic loss claims. Nelson v. Todd’s Ltd., 426 N.W.2d 120, 122-25 (Iowa 1988). The court applied the *509 economic loss rule to a product liability case, but did so using a different rationale. Id. The Nelson court quoted with approval the following analysis suggested by a federal court of appeals in deciding whether a particular claim is cognizable in tort or contract:
“The line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim.”
Id. at 124-25 (quoting Pa. Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1173 (3d Cir.1981)). Whereafter, our court stated:
We agree that the line to be drawn is one between tort and contract rather than between physical harm and economic loss.... When, as here, the loss relates to a consumer or user’s disappointed expectations due to deterioration, internal breakdown or non-accidental cause, the remedy lies in contract.
Tort theory, on the other hand, is generally appropriate when the harm is a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect.
Nelson, 426 N.W.2d at 125. Thus, the court abandoned its former proximate cause rationale in favor of a torl^contract analysis. This analysis is particularly fact intensive and the outcome is contingent on the nature of the claim.
We reaffirmed the tort-contract analysis in Tomka v. Hoechst Celanese Corp., 528 N.W.2d 103 (Iowa 1995). The Tomka court found the damages sustained by the plaintiff clearly fell within contract theory, not tort theory. Tomka, 528 N.W.2d at 107. The Tomka court held, “ ‘defects of suitability and quality are redressed through' contract actions and safety hazards through tort actions.’ ” Id. (quoting Northridge Co. v. W.R. Grace & Co., 162 Wis.2d 918, 471 N.W.2d 179, 185 (1991)).
In 1999 this court again applied the tort — contract analysis in a products liability case. Am. Fire & Cas. Co. v. Ford Motor Co., 588 N.W.2d 437, 438 (Iowa 1999). In American Fire and Casualty, the court determined the economic loss rule would not preclude a product liability suit brought by the automobile owner’s insurer, as subrogee, against the manufacturer seeking recovery for the loss of an automobile when the automobile spontaneously caught fire. Id. at 439-40. This court held the manner in which the injury occurred sounded more like a tort action than a contract action; therefore, the economic loss rule would not bar recovery by the insurer. Id.
In 2000 this court utilized the tort^contract analysis to determine that a purchaser of a home could not recover on a negligence theory against the seller for purely economic loss. Determan v. Johnson, 613 N.W.2d 259, 264 (Iowa 2000). In making this determination, the court applied the factors enumerated in Nelson. Id. at 263. The court looked at the nature of the defect, the type of risk, and manner in which the injury arose. Id. Relying on the nature of the claim the court reasoned the “plaintiffs claim is based on her unfulfilled expectations with respect to the quality of the home she purchased. Accordingly, her remedy lies in contract law, not tort law.” Id. Thus, the court found the action sought the benefit of the bargain rather than a tort remedy. Id. at 264.
*510 Most recently, in 2010, this court revisited the economic loss rule and held the rule did not preclude a buyer’s tort claim of negligent misrepresentation. Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc., 783 N.W.2d 684, 693 (Iowa 2010). Here too, the court reached its conclusion by examining the nature of the claim. Id. The court reaffirmed the purpose behind the rule — “to prevent litigant with contract claims from litigating them inappropriately as tort claims.” Id.
In addition to product liability claims that result from sudden and dangerous injuries and claims based on negligent misrepresentation, this court has not applied the economic loss rule in cases of professional negligence. This court has allowed clients to sue their attorney for negligence and collect purely economic loss despite the economic loss rule. See Crookham v. Riley, 584 N.W.2d 258, 265-66 (Iowa 1998); Pickens, Barnes & Abernathy v. Heasley, 328 N.W.2d 524, 526-27 (Iowa 1983). The same is true for suits against accountants. See Kemin Indus., Inc. v. KPMG Peat Marwick LLP, 578 N.W.2d 212, 221 (Iowa 1998).
Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), is widely regarded as the landmark decision in this area. After Robins, courts have applied the economic loss rule in a variety of cases using multiple rationales and justifications. Peter Benson, The Problem with Pure Economic Loss, 60 S.C. L.Rev. 823, 823-38 (2009) [hereinafter Benson]. At the very core of the rule is the idea that it serves as a boundary line between two areas of law — contract law, which rests on a bargained-for obligation between limited and immediately identifiable parties, versus tort law, grounded in legal obligations imposed on the greater population generally. In most cases, one of these two areas of the law will allow an aggrieved party a cause of action. In some circumstances, however, neither will. This circumstance gives us the opportunity to design a framework under which exceptions to the economic loss rule may be considered.
The common thread running through all our prior cases is that we apply the economic loss rule in a mechanical fashion. We look at the facts and the nature of the lawsuit to determine if the plaintiff is attempting to litigate a contract claim as a tort claim. Van Sickle Constr. Co., 783 N.W.2d at 693. In making this determination, we consider whether the plaintiff suffered an injury, or was merely disappointed in his or her expectation. In the event a party suffered only economic loss, we may allow a claim but not before further inquiry. This inquiry requires us to determine if the economic loss sustained was sudden and dangerous as in American Fire & Casualty or simply an unfulfilled expectation as in Determan.
As far back as 1958, courts have contemplated circumstances that give rise to exceptions to the economic loss rule. Biakanja v. Irving, 49 Cal.2d 647, 320 P.2d 16, 18-19 (1958). In Biakanja a notary public negligently failed to have a will property executed resulting in a pure economic loss to the plaintiff. Id. at 17. Because of the closeness of the defendant’s conduct and the injury suffered, the court reasoned that it was fair and just to allow the plaintiff to recover damages. Id. at 19. The primary focus of the court was the “end and aim” of the transaction. Id. at 18-19.
In 1979 the California Supreme Court revisited the exception to the economic loss rule. J'Aire Corp. v. Gregory, 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60, 61 (1979). Here, the court allowed recovery of pure economic damages when a restaurant owner suffered losses due to the negligence of a contractor performing *511 work on a building the restaurant owner was leasing. Id., 157 Cal.Rptr. 407, 598 P.2d at 66. As in Biakanja, the court reasoned that the special relationship of the parties created an independent duty on the part of the defendant to perform the work diligently and with consideration to the tenants. Id., 157 Cal.Rptr. 407, 598 P.2d at 63-65.
In People Express Airlines, Inc. v. Consolidated Rail Corporation, 100 N.J. 246, 495 A.2d 107 (1985), the plaintiffs airline terminal was forced to shut down when ethylene oxide escaped from a tank car necessitating evacuation of the surrounding area. People Express Airlines, Inc., 495 A.2d at 108. Without any property damage or physical injury, the court allowed People Express to recover its pure economic loss. Id. at 109, 118. The court reasoned that pure economic losses should not be borne by innocent victims. Id. at 111.
Commentators have also opined that a strict mechanical application of the economic loss rule may not be possible and that exceptions to the rule are necessary. See generally Benson, 60 S.C. L.Rev. at 823-38; Herbert Bernstein, Civil Liability for Pure Economic Loss Under American Tort Laio, 46 Am. J. Comp. L. Ill, 126-31 (1998). After first adopting and applying the economic loss rule, this court has also acknowledged there may be circumstances giving rise to a cause of action for purely economic loss arising from an independent duty outside the world of contract law and beyond tort law. I believe the economic loss rule should remain generally, with exceptions based upon the nature of the action.[5] This case presents one of those exceptions.
In examining the cause of action in the present case, it is clear to me that Annett Holdings is not trying to circumvent a contract claim by bringing a tort claim. Allowing the claim against Kum & Go to proceed will not result in a flood of litigation, speculative damages, or thwart any of the other rationales commonly asserted in association with the economic loss rule. I reach this conclusion for a number of reasons.
First, Annett could not bring a contract claim against Kum & Go. Annett did not have any contractual relationship with Kum & Go. Therefore, there is not a contractual remedy available to Annett to redress this alleged wrong. Moreover, without a contractual relationship, Annett was unable to allocate the risk of loss if Kum & Go was negligent in its processing of the purchases. As one commenter pointed out:
With respect to the boundary-line function of the economic loss rule, decisions holding that third-party claims are not foreclosed by the rule make sense. If there is no agreement between the parties to a lawsuit, there is no risk that recognizing tort obligations will violate the parties’ freedom to contract, because there never was an effort to exercise such freedom. If the parties are not in privity, contract law does not potentially afford a remedy, except in the relatively rare case of a third-party beneficiary. Thus, respect for contract principles and private ordering does not require that the economic loss rule bar the claims of persons not standing in a contractual relationship. The purpose of the economic loss rule is not to leave injured persons remediless for economic losses *512 but to ensure respect for private ordering by relegating a plaintiff to contract remedies in cases where there is an agreement between the parties allocating economic risks. If there is no contract between the parties to litigation, there is no boundary-line function to be performed by the economic loss rule.
Vincent R. Johnson, The Boundary-Line Function of the Economic Loss Rule, 66 Wash. & Lee L.Rev. 523, 555 (2009) (footnotes omitted).
Courts in Minnesota and Colorado have agreed with this rationale. See Russo v. NCS Pearson, Inc., 462 F.Supp.2d 981, 1001 (D.Minn.2006) (“[I]t strikes the Court as unfair to hold ..., as a matter of law, that Plaintiffs lack a tort remedy because the alleged tort arose in the context of the performance of a contract to which they were strangers.”); A.C. Excavating v. Yacht Club II Homeowners Ass’n, 114 P.3d 862, 870 (Colo.2005) (“[SJubcontrac-tors [had] assumed contractual obligations with the developer and general eontraetor[;] these obligations did not and could not relieve the subcontractors of their independent duty to act without negligence in constructing the development.”).
Second, Kum & Go actions did not accompany the sale or creation of a product. Kum & Go was providing a service just as an attorney or an accountant does for their client. In performing this service, Kum & Go had an independent duty to use ordinary care in the processing of the purchases made with the Annett’s credit card. In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 613 F.Supp.2d 108, 119 (D.Me.2009). Negligence means failure to use ordinary care. Mescher v. Brogan, 223 Iowa 573, 574, 272 N.W. 645, 646 (1937). Ordinary care is the care which a reasonably careful person would use under similar circumstances. Id. Therefore, negligence is “doing something a reasonably careful person would not do under similar circumstances, or failing to do something a reasonably careful person would do under similar circumstances.” Bartlett v. Chebuhar, 479 N.W.2d 321, 322 (Iowa 1992) (quoting 1 Iowa Civil Jury Instructions 700.2 (1987)). Annett had expectation that Kum & Go would process these transactions in a nonnegligent manner.
In the summary judgment record there is a genuine issue of material fact as to whether Kum & Go was negligent in the processing of the credit card transactions. The breach of the duty to use ordinary care in the processing of the purchases made with Annett’s credit cards is independent of any contractual duty. In Iowa, courts recognized that under some circumstances, a breach of a contractual duty may give rise to an independent action in tort. Preferred Mktg. Assocs. Co. v. Hawkeye Nat’l Life Ins. Co., 452 N.W.2d 389, 397 (Iowa 1990). It seems incongruous to me that this court will allow independent tort actions in situations where a breach of a contractual duty gives rise to an independent tort, but will not allow such an action where an independent duty exists and there is no contract between the parties.
Finally, if you examine the basis of the claim, Annett is not making a claim for an injury to a product. Annett is claiming that Kum & Go was negligent in the processing of the credit card transactions. Kum & Go had a duty independent of a statute to operate and oversee the use of the credit cards. Historically, our cases involving the economic loss rule focus on a fact situation where the defendant sells a product that fails to perform as expected. See Determan, 613 N.W.2d at 260 (involving the sale of a home); Am. Fire & Cas. Co., 588 N.W.2d at 438 (involving the sale of a vehicle); Tomka, 528 N.W.2d at 105 (involving the sale of veterinarian drug *513 products); Nelson, 426 N.W.2d at 121 (involving the sale of a meat-curing product). Obviously, Annett’s claims arise from transactions that were vastly different from those presented in our prior cases. The facts of this case are akin to a legal or accounting malpractice case.
This distinction was recognized by a federal district court in Maine when it held under Maine law the economic loss rule will not be extended to a situation where a merchant failed to use ordinary care in processing a credit card transaction. In re Hannaford Bros., 613 F.Supp.2d at 127-28. There, the plaintiffs alleged a grocery store failed to exercise ordinary care in processing a credit card transaction, causing the cardholder to suffer purely economic loss. Id. at 115-16. The facts of In re Hannaford Bros, are similar to the facts of this case.
The court reviewed Maine law and determined the Maine courts established the economic loss rule to prevent a purchaser from receiving expectation damages in connection with the purchase of a product. Id. at 127-28. In Maine, these types of damages are better left to be litigated under express and implied warranty theories. Id. Our court used this same rationale when it applied the economic loss rule in Determan, Tomka, and Nelson. The court also used this rationale when it rejected the economic loss rule in American Fire and Casualty. Annett’s action in this case does not involve the sale of a product or expectation damages; therefore, there is no logical reason to apply the economic loss rule in this case.
In summary, I would not apply the economic loss rule mechanically. I would look at the nature of the action, the breach of the duty alleged, and the damages sought before I would allow the economic loss rule to bar a claim. I agree the economic loss rule should preclude recovery when the parties are in privity with the attendant opportunity to allocate the risk of loss, and no independent duty is established, because any damages incurred could have been covered by an agreement negotiated between the parties. It makes no sense to hold parties not in privity to the same standard, where a duty to process credit card transactions in a reasonable manner exists. The purpose of the rule is to prevent contract claims from being litigated as tort claims. There are no contract claims available to Annett under the facts of this case. Hence, the purpose of the economic loss rule is not frustrated by applying it under these narrow facts. Accordingly, I would reverse the district court’s order granting Kum & Go’s motion for summary judgment.
HECHT, J., joins this dissent.

. It should be noted that many foreign common law jurisdictions have substantially revised, or have done away with, similar doctrines. See generally Karen Hogg, Negligence and Economic Loss in England, Australia, Canada, and New Zealand, 43, Int’l & Comp. L.Q. 116 (1994).