**AMERICAN FIRE AND CASUALTY CO., Appellant,**

v.

**FORD MOTOR COMPANY, Appellee.**

No. 97–1142.

Supreme Court of Iowa.

Jan. 21, 1999.

Philip H. Dorff, Jr. and Hugh J. Cain of Hopkins & Huebner, P.C., Des Moines, for appellant.

Paul A. Williams of Shook, Hardy & Bacon, LLP, Kansas City, and R. Todd Gaffney of Finley, Alt, Smith, Scharnberg, May & Craig, P.C., Des Moines, for appellee.

Dawn R. Siebert, Des Moines, and Frederick M. Haskins of Patterson Law Firm, Des Moines, for amicus curiae-Iowa Insurance Institute.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL, and TERNUS, JJ.

HARRIS, Justice.

This case calls for another interpretation of the economic loss theory in a products liability claim, a matter on which the courts widely disagree. The trial court dismissed this suit against a manufacturer because it involved a claim only for loss of the product itself. Although much could be said for the views of those courts in disagreement with us, we cast our lot in *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103 (Iowa 1995); *Nelson v. Todd's Ltd.*, 426 N.W.2d 120 (Iowa 1988); and *Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.*, 345 N.W.2d 124 (Iowa 1984). Although those cases involved strict liability and negligence claims that failed, they established an analysis that leads to a different conclusion here. We reverse and remand.

Plaintiff American Fire & Casualty Co. brought this action as subrogee of its insured Gary Foust. Foust owned a 1991 pickup truck which was designed, manufactured, and distributed by defendant Ford Motor Co. In 1996 the truck caught fire causing property damage to the truck and its contents. After discharging its obligation to Foust under its policy, American Fire brought this products liability action, claiming a defect caused the pickup to catch fire. The action was dismissed on Ford's motion, the trial court concluding dismissal was mandated by our holdings in the above-cited cases.

I. When reviewing an order sustaining a motion to dismiss, we view the allegations of the petition in the light most favorable to the petitioner, resolve doubts in the petitioner's favor, and uphold the ruling only if the petitioner could not establish his or her

right to judicial review under any state of facts provable under the allegations of the petition. *Lundy v. Department of Human Servs.*, 376 N.W.2d 893, 894 (Iowa 1985).

■ II. The economic-loss theory, although a much more general and doubtless older doctrine, presents special problems in products liability cases. The general doctrine prohibits tort recovery for purely economic losses, consigning such claims to contract law. *Nebraska Innkeepers*, 345 N.W.2d at 126. The differing ways in which various courts have applied the economic-loss theory in products liability cases is traced in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866–70, 106 S.Ct. 2295, 2300–302, 90 L.Ed.2d 865, 874–76 (1986), a case that established the principles to be applied when federal courts deal with admiralty law.

The *Nelson* plaintiffs had purchased a curing agent to treat meat, the curing agent didn't work, and the plaintiff's meat spoiled resulting in lost value of the meat and damage to their business reputation. 426 N.W.2d at 121. We held "that purely economic injuries *without accompanying physical injury to the user or consumer or to the user or consumer's property* is not recoverable under strict liability." *Id.* at 123 (emphasis added). The emphasized language carefully leaves room for the present case. We said the damage occasioned by the curing agent "was not a result of anything hazardous or dangerous" and did not occur because the agent damaged the meat in some active way, "but because it failed to work at all." *Id.*

■ We emphasized "the line to be drawn is one between tort and contract rather than between physical harm and economic loss." *Id.* at 125. Factors to be considered are the nature of the defect, the type of risk, and the manner in which the injury arose. *Id.* at 124 (citing *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1173 (3d Cir.1981)). The harm to Nelson's meat fell on the contract side because it was a foreseeable result from a failure of the product to work properly. *Id.* at 125. The loss related to "a consumer or user's disappointed expectations." *Id.* The Nelsons lost the ben-

efit of their bargain and therefore must resort to contract law for remedies. *Id.* at 124.

■ We said tort theory is generally available when the harm results from "a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a *genuine hazard in the nature of the product defect.*" *Id.* at 125 (emphasis added). An example was given: if a fire alarm fails to work and a building burns down, that is considered an "economic loss" even though the building was physically harmed. It was a foreseeable consequence from the failure of the product to work properly. But if the fire was caused by a short circuit in the fire alarm itself, it is not economic loss. *Id.* at 124 (citing *Fireman's Fund Am. Ins. Cos. v. Burns Elec. Sec. Serv.*, 93 Ill.App.3d 298, 48 Ill.Dec. 729, 417 N.E.2d 131, 133 (Ill.App.Ct.1980)).

■ Nelson was revisited in *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103 (Iowa 1995), when the operator of a custom cattle feeding business sued the manufacturer of a growth hormone because the cattle treated with the hormone gained weight slower than expected, were sold later than expected, and the plaintiff lost money because of the delay. We said contract law protects a purchaser's expectation interest that the product will be fit for its intended use, whereas products liability law concerns risk of injury to a person or the person's property through exposure to a dangerous product. 528 N.W.2d at 107 (cited sources omitted). It can be summarized like this: "defects of suitability and quality are redressed through contract actions and safety hazards through tort actions." *Id.* (quoting *Northridge Co. v. W.R. Grace & Co.*, 162 Wis.2d 918, 471 N.W.2d 179, 185 (Wis.1991)).

The common thread running through our cases rejecting recovery is the lack of danger created by the defective product. The problem with the curing agent in *Nelson* and growth hormone in *Tomka* had only to do with claimed failures to perform as expected. Each plaintiff suffered the loss of the benefit of their bargain. These cases do not bar recovery in the present case, but rather support it. Both *Nelson* and *Tomka* emphasized

440

that hazard and danger distinguished tort liability from contract law. They distinguished the disappointed consumers from the endangered ones. Fire has been characterized as a "sudden and highly dangerous occurrence." *Pennsylvania Glass*, 652 F.2d at 1174. A truck starting itself on fire would certainly qualify more as a danger than as a disappointment.

The dismissal of the case must be reversed and the matter remanded to district court to proceed on its merits.

**REVERSED AND REMANDED.**

All justices concur except CARTER, J., who concurs in the result only.