Lisa A. DETERMAN, Appellant,

v.

James H. JOHNSON and Diane V. Johnson, Appellees.

No. 98–2050.

Supreme Court of Iowa.

July 6, 2000.

Randall E. Nielsen of Pappajohn, Shriver, Eide & Nicholas, P.C., Mason City, for appellant.

David L. Riley of Yagla, McCoy & Riley, P.L.C., Waterloo, for appellees.

TERNUS, Justice.

The appellant/plaintiff, Lisa Determan, discovered significant structural problems in the home she had purchased from the appellees/defendants, James and Diane Johnson. Determan filed a negligence action against the defendants to recover her costs of repair, but the trial court dismissed her claims on the basis that the defendants owed no duty to the plaintiff. The court of appeals affirmed, holding that the plaintiff's damages were not recoverable under tort law. This court granted further review and we now affirm.

I. *Background Facts and Proceedings.*

In 1990, the defendants decided to build a home for themselves. They did not have any house plans; they simply took pictures from a magazine to the local lumberyard and asked that plans be prepared. These plans were then submitted to the city for a building permit. Defendant James Johnson, a farmer and used-car dealer, listed himself as the contractor on the application for the permit. The defendants hired a local carpenter, however, to do the actual construction. When the house was completed, the defendants and their children moved in.

In 1992, the defendants decided to sell their home and listed it for sale at a price of $190,000. The plaintiff and her then-husband, Jeffrey Determan, were interested in purchasing the home but had concerns about the quality of the workmanship. After receiving some reassurances from their real estate agent, the Determans bought the house for $120,000. The purchase agreement contained the following language:

> BUYERS acknowledge that they have made a satisfactory inspection of the property and are purchasing the property in its existing condition.

> The BROKER, its agents, employees, and associates make no representations or warranties as to the physical or mechanical condition of the property, size, value, future value or income potential.

In 1997, after the Determans' divorce, the plaintiff discovered a sag in the roof of the house. Further investigation, which included consultations with a local homebuilder, an architect, and a structural engineer, revealed serious structural problems in the home. Specifically, the beam system supporting the roof was inadequate and did not comply with the applicable building code. In addition, a vapor barrier had not been properly installed, resulting

in significant moisture problems. The plaintiff's consultants indicated that the roof could be in danger of collapsing.

The plaintiff then filed this action against the defendants seeking recovery under several different negligence theories.[1] She sought to recover "repair costs, loss of use, inconvenience, emotional distress, and mental pain and suffering." The case proceeded to trial. At the close of the evidence, the defendants moved for a directed verdict on several grounds, including that they owed no duty to the plaintiff and that her recovery was limited to contract remedies. With one exception, the district court granted the defendants' motion on all of the plaintiff's claims, holding the defendants owed no duty to the plaintiff. The only claim remaining was the plaintiff's assertion that the defendants had fraudulently failed to disclose that a substantial portion of the wastewater treatment system extended beyond the property line. This claim was submitted to the jury, which returned a verdict in favor of the plaintiff, awarding damages in the amount of $8800. Judgment was entered on the jury's verdict, and neither party has challenged this judgment on appeal.

The plaintiff appealed the trial court's ruling on the defendants' motion for directed verdict, claiming there was sufficient evidence to establish that the defendants owed her a duty. We transferred the appeal to the Iowa Court of Appeals, which affirmed the district court on the basis that the plaintiff had no tort remedy for her damages. *See Moyer v. City of Des Moines,* 505 N.W.2d 191, 193 (Iowa 1993) (holding that an appellate court may affirm on any ground "urged in the district court but not considered by that court"). Upon the plaintiff's request, we granted further review. Because we agree with

the court of appeals that the plaintiff cannot recover under tort law, we do not address the issue of duty.

## II. *Scope of Review.*

 Our standard of review for the grant of a motion for directed verdict is well established:

> We review the trial court's decision to direct a verdict for the correction of errors of law. A defendant's motion for directed verdict should be denied if there is substantial evidence to support the plaintiff's claim. "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion."

*Hasselman v. Hasselman,* 596 N.W.2d 541, 545 (Iowa 1999) (citations omitted) (quoting *Johnson v. Dodgen,* 451 N.W.2d 168, 171 (Iowa 1990)). Our role, then, is to determine "whether the trial court correctly determined that there was insufficient evidence to submit the issue ... to the jury." *Id.*

## III. *Governing Law.*

This court has on several occasions in the past considered the compensability of economic loss damages in tort. It is helpful to briefly review this line of cases in deciding the appropriate outcome here.

We first addressed this issue in *Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.,* 345 N.W.2d 124 (Iowa 1984). In that case this court adopted the general rule that a plaintiff "cannot maintain a claim for purely economic damages arising out of [a] defendant's alleged negligence." *Nebraska Innkeepers,* 345 N.W.2d at 128.

In a subsequent decision, we extended this rule to bar claims based on strict liability in tort where a product sold by the

---

1. The plaintiff's petition also included a breach-of-implied-warranty claim, but it was dismissed on the defendants' motion for directed verdict. The dismissal of the warranty claim is not challenged on appeal. In addition, the plaintiff claimed that the defendants

had fraudulently concealed the home's structural problems from her. The trial court also dismissed this claim, and this dismissal was affirmed by the court of appeals. The plaintiff has not asked this court to review that ruling.

defendant to the plaintiff failed to perform as it was expected, but caused no physical injury to person or property. *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 123 (Iowa 1988). We refined the *Nebraska Innkeepers* rule by stating:

> We agree that the line to be drawn is one between tort and contract rather than between physical harm and economic loss.... When, as here, the loss relates to a consumer or user's disappointed expectations due to deterioration, internal breakdown or non-accidental cause, the remedy lies in contract.
>
> Tort theory, on the other hand, is generally appropriate when the harm is a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect.

*Id.* at 125 (citation omitted). In deciding whether a particular claim is cognizable in tort or contract, we quoted with approval the following analysis suggested by a federal court of appeals:

> "[T]he line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim."

*Id.* at 124–25 (quoting *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1173 (3rd Cir.1981)).[2] Notwithstanding our adherence to this multi-factor test, we have required at a minimum that the damage for which recovery is sought must extend beyond the product itself. *Compare Flom v. Stahly*, 569 N.W.2d 135, 141 (Iowa 1997) (holding plaintiff's claim

was contractual in nature because harm caused by defect was limited to product), *with American Fire & Cas. Co. v. Ford Motor Co.*, 588 N.W.2d 437, 438–39 (Iowa 1999) (permitting tort recovery where defect caused a sudden and dangerous occurrence causing damage not only to the product but to other property as well).

The distinction drawn in *Nelson* between tort claims and contract claims based on a defective product is illustrated by two of our cases in which we have applied the legal principles set forth in *Nelson*, but have reached differing results. *Compare Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103 (Iowa 1995), *with American Fire*, 588 N.W.2d at 437. We will briefly discuss these cases now.

In *Tomka*, the plaintiff operated a custom feeding operation. 528 N.W.2d at 105. He sued the manufacturer of a growth hormone given to cattle that the plaintiff had contracted to feed to market weight. *Id.* The plaintiff claimed that the cattle did not gain weight as quickly as they should have and, as a result, it took the plaintiff longer to raise the cattle to a saleable weight. *Id.* As a consequence of the extended feeding period, the plaintiff's expenses were greater and he lost money on his custom feeding contracts. *Id.* Applying the rule set forth in *Nelson*, we held that the plaintiff could not recover under tort theories of liability because the product simply failed to do what it was supposed to do—promote the cattle's growth. *Id.* at 107. We noted that "contract law protects a purchaser's expectation interest that the product received will be fit for its intended use." *Id.*

In contrast, in *American Fire*, we permitted a tort recovery when the defect in the product—a truck—caused a fire that damaged the truck and its contents. 588 N.W.2d at 438. We observed that "tort theory is generally available when the

---

**2.** In deciding whether a plaintiff may rely on a theory of strict liability, the Superior Court of Pennsylvania has rejected the test set out in *Pennsylvania Glass* in favor of a stricter test that focuses solely on whether "the damage alleged is to the product itself, whether or not

the defect posed a risk of other damage or injury or manifested itself in a sudden or calamitous occurrence." *REM Coal Co. v. Clark Equip. Co.*, 386 Pa.Super. 401, 563 A.2d 128, 132 (1989).

harm results from 'a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect.'" *Id.* at 439 (emphasis omitted) (quoting *Nelson,* 426 N.W.2d at 125).

With this framework to guide our analysis, we now consider the facts of the case before us.

### IV. *Application of Law to Facts.*

In the present case the evidence introduced at trial showed that the house purchased by the plaintiff from the defendants suffered from significant structural defects. Specifically, the structural support for the roof was woefully inadequate and the moisture barrier in the walls had been improperly installed. These defects manifested themselves in the form of sagging areas in the roof, cracks in the walls, and moisture spots on the walls and ceilings. Although the plaintiff's experts testified that the roof could eventually collapse, that occurrence had not yet materialized at the time of trial. Thus, the plaintiff's damages consist of the expenses she has and will incur to repair the defects in the home's construction.

In deciding the proper remedy for the plaintiff's loss, we look to "'the nature of the defect, the type of risk, and the manner in which the injury arose.'" *Nelson,* 426 N.W.2d at 125 (quoting *Pennsylvania Glass Sand Corp.,* 652 F.2d at 1173). In addition, the type of damages that the plaintiff seeks to recover is necessarily relevant to our consideration of these factors. *See Flom,* 569 N.W.2d at 141. Here, the defects at issue involve the quality of the home purchased by the plaintiff. Although these defects present a genuine safety hazard to persons and property, that risk has not come to pass. Thus, the injury at present, and the one for which recovery is sought, is limited to repair of the defective construction. The plaintiff is not seeking to recover damages from any "sudden or dangerous occurrence." *See Nelson,* 426 N.W.2d at 125. Rather, the plaintiff's damages result from the deterioration of the house due to its poor construction.

The plaintiff argues that because the house presents a danger to its occupants, a tort recovery should be allowed. But this argument ignores the fact that our decision rests on a consideration of not only the type of risk, but also the nature of the defect, the manner in which the injury occurred, and the specific injury for which compensation is sought. Based on a weighing of all of these factors, we conclude that the plaintiff's claim is based on her unfulfilled expectations with respect to the quality of the home she purchased. Accordingly, her remedy lies in contract law, not tort law. *See American Fire,* 588 N.W.2d at 439 ("'defects of suitability and quality are redressed through contract actions'" (quoting *Northridge Co. v. W.R. Grace & Co.,* 162 Wis.2d 918, 471 N.W.2d 179, 185 (1991))).

This conclusion is consistent with our analysis of a strikingly similar issue considered in a different context in *Flom v. Stahly.* In *Flom,* the plaintiffs had purchased a home from the defendants, which had been constructed in large part by one of the defendants, a medical doctor by profession. 569 N.W.2d at 137. After buying the house, the plaintiffs discovered several defects in the construction of the home. *Id.* at 138. Specifically, the walls of the house had been improperly constructed, resulting in rotting wood and moisture spots in the stucco plaster, and the heating system had been improperly installed, causing the ductwork to disintegrate. *Id.* The plaintiffs sued the defendants and recovered a judgment for their costs of repair under a theory of breach of express warranty. *Id.* at 139.

The pertinent issue on appeal was whether the plaintiffs' recovery should be reduced by their own fault under our comparative fault statute, Iowa Code chapter 668 (1991). *Id.* at 140. We held that the comparative fault statute was limited to liability in tort. *Id.* at 141. Therefore, we examined whether the plaintiffs' claim was

contractual in nature or cognizable in tort. *Id.* We held that it was contractual in nature, and therefore not subject to the comparative fault statute, because "[t]he harm alleged was to the object of the contract (the house) and not to [the plaintiffs'] persons or other property." *Id.*

▆ Similarly, here, any harm caused by the defects in the house was to the house itself, and not to any persons or other property. In addition, as noted above, there has been no "sudden or accidental occurrence"; rather the harm for which the plaintiff seeks to recover "relates to [the plaintiff's] disappointed expectations due to deterioration, internal breakdown or non-accidental cause." *Nelson,* 426 N.W.2d at 125. As we noted in *Nelson,* " 'When a buyer loses the benefit of his bargain because the goods are defective ... he has his contract to look to for remedies. Tort law need not, and should not, enter the picture.' " *Id.* at 124 (quoting *Fireman's Fund Am. Ins. Cos. v. Burns Elec. Sec. Serv. Inc.,* 93 Ill.App.3d 298, 48 Ill.Dec. 729, 417 N.E.2d 131, 134 (1980)). Accordingly, " 'the expectation-bargain protection policy of warranty law' " is implicated here, not " 'the safety-insurance policy of tort law.' " *Id.* at 124–25 (quoting *Pennsylvania Glass Sand Corp.,* 652 F.2d at 1173).

### V. *Conclusion and Disposition.*

Viewing the facts in a light most favorable to the plaintiff, we conclude that the evidence is not sufficient to support a recovery under the tort theories upon which she relies. Therefore, the trial court correctly granted a directed verdict for the defendants on these claims.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except LAVORATO, J., who takes no part.