# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-1075
_____

Floyd County Mutual Insurance Association, as subrogee on behalf of Clark R. McGregor, on behalf of Ronald R. McGregor Revocable Trust on behalf of McGregor Farms, Inc.

*Plaintiff - Appellant*

v.

CNH Industrial America LLC

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: September 23, 2021
Filed: December 1, 2021
_____

Before SMITH, Chief Judge, GRUENDER and STRAS, Circuit Judges.
_____

GRUENDER, Circuit Judge.

On September 30, 2017, a tractor manufactured by CNH Industrial America LLC caught fire. Floyd County Mutual Insurance Association sued CNH in federal court under a theory of product liability, claiming that its insureds owned the tractor and other property on the tractor, both of which were damaged in the fire, and that

Floyd County Mutual was subrogated to its insureds' claims against CNH because Floyd County Mutual had paid its insureds' claim for the damage. Floyd County Mutual invoked 28 U.S.C. § 1332 as the basis for the district court's subject-matter jurisdiction. After requesting supplemental briefing on the matter, however, the district court[1] concluded that § 1332's amount-in-controversy requirement was not met because the damage to the tractor itself was not recoverable under Iowa law and the value of the remaining damage did not exceed $75,000. Accordingly, the district court dismissed the case for lack of subject-matter jurisdiction. Floyd County Mutual appeals, and we affirm.

We consider *de novo* whether the district court had subject-matter jurisdiction. *Ritchie Cap. Mgmt., L.L.C. v. JP Morgan Chase & Co.*, 960 F.3d 1037, 1046 (8th Cir. 2020). The only candidate basis for jurisdiction in this case is § 1332, which requires diversity of citizenship and an amount in controversy in excess of $75,000. A complaint that alleges more than $75,000 in damages nonetheless fails the amount-in-controversy requirement if recovery for all but $75,000 or less is barred as a matter of law. *See Rasmussen v. State Farm Mut. Auto. Ins.*, 410 F.3d 1029, 1031 (8th Cir. 2005) (concluding that the amount-in-controversy requirement was not met because governing law would permit recovery for, at most, only $50,000 of the damages alleged); *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046-50 (3d Cir. 1993) (resolving an open question of state law to determine whether the extent of legally permitted recovery exceeded $75,000). In a diversity case, state law governs the extent of damages available to a successful plaintiff. *Gander v. FMC Corp.*, 892 F.2d 1373, 1382 (8th Cir. 1990).

Here, the damages alleged in the complaint were limited to $145,000.00 in damage to the tractor and $22,787.81 in damage to other property. Thus, if Iowa law does not permit recovery for the tractor, then recovery for all but $22,787.81 of

---

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

the damages alleged would be barred as a matter of law. In that case, § 1332's amount-in-controversy requirement would not be met.

Whether Iowa law permits recovery for the tractor depends on the scope of Iowa's economic-loss doctrine, which aims to prevent the "tortification of contract law" by precluding parties from recovering from one another in tort for risks that they "can be presumed to have allocated between themselves in their contract." *See Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503 (Iowa 2011). The Iowa Supreme Court has adopted a "multi-factor test" for "whether a particular claim is cognizable in tort or contract." *Determan v. Johnson*, 613 N.W.2d 259, 262 (Iowa 2000). "Notwithstanding [its] adherence to this multi-factor test," however, the Iowa Supreme Court "require[s] at a minimum that the damage for which recovery is sought [in a product-liability case] must extend beyond the product itself." *Id.*; *see also Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W.2d 212, 221 (Iowa 2016) (indicating that product liability "require[s] personal injury or property damage apart from the product itself"). For example, although the Iowa Supreme Court has identified "harm result[ing] from a sudden or dangerous occurrence," such as a vehicle catching on fire, as an injury cognizable in tort, it does not permit recovery for such harm under a theory of product liability if the harm was limited to the defective product itself. *Determan*, 613 N.W.2d at 262-63 (internal quotation marks omitted).

Thus, if the fire had damaged the tractor alone, then this would be an easy case. Iowa's economic-loss doctrine clearly bars recovery under a theory of product liability for damage caused by a vehicle's spontaneous combustion if the damage is limited to the vehicle itself. *Id.*

But Floyd County Mutual has alleged that the fire damaged not only the tractor but also other property. Iowa's economic-loss doctrine generally permits recovery for the other property in a case like this. *See id.* at 262. The question is whether it permits recovery for the tractor as well.

Floyd County Mutual maintains that the Iowa Supreme Court decided this question, albeit implicitly, in *American Fire & Casualty Co. v. Ford Motor Co.*, 588 N.W.2d 437 (Iowa 1999). There, a "truck caught fire causing property damage to the truck and its contents." *Id.* at 438. "After discharging its obligation to [the truck owner] under its policy, [the insurer] brought [a] products liability action [against the truck manufacturer], claiming a defect caused the [truck] to catch fire." *Id.* The court concluded that the economic-loss doctrine did not bar recovery because the vehicle's spontaneous combustion was "a sudden or dangerous occurrence." *Id.* at 439-40. At no point did the court indicate that recovery would be limited to the truck's contents. Floyd County Mutual concludes that the court meant to permit recovery for the truck itself.

The district court was unpersuaded. "Damages was not an issue before the Supreme Court in *American Fire*," it pointed out, and because the Iowa Supreme Court's jurisdiction did not depend on the amount in controversy, it "had no reason sua sponte to analyze what damages the plaintiff could recover." Accordingly, the district court concluded that it was "too much of a stretch" to infer from *American Fire*'s silence about the extent of recovery that the court meant to permit recovery for the truck. CNH echoes this argument in its brief on appeal.

We agree with Floyd County Mutual that *American Fire* cannot be dismissed so easily. As Floyd County Mutual points out, the plaintiff in *American Fire* did not seek recovery for the truck's contents. True, the court noted in passing that the fire caused "damage to the truck *and its contents*." *Id.* at 438 (emphasis added). But it also noted that "[t]he trial court dismissed this suit . . . because it involved a claim only for loss of the product itself." *Id.* And the parties' briefs confirm that the plaintiff sought recovery only for the truck. *See* Appellant's Brief at 2, *Am. Fire*, 588 N.W.2d 437 (No. 97-1142), 1997 WL 34502361, at *2 (seeking recovery for "payments to or on behalf of its insured for the damage allegedly caused by the fire *to the vehicle*" and indicating that it was appealing the trial court's grant of "the motion to dismiss *as to the claim for property damages to the Ford pickup*" (emphases added)); Appellee's Final Brief at 10, *Am. Fire*, 588 N.W.2d 437 (No.

-4-

97-1142), 1997 WL 34502363, at *10 ("American Fire does not allege recovery for personal injury or damage to property; *it seeks recovery solely for damage to the allegedly defective vehicle itself*." (emphasis added)).

The problem for Floyd County Mutual is that the same feature of *American Fire* that shows that the court meant to permit recovery for the product itself—the fact that the plaintiff did not seek recovery for anything else—also renders *American Fire* incompatible with *Determan*, which was decided one year later. According to *Determan*, the economic-loss doctrine bars recovery in a product-liability case, even one involving a "sudden and dangerous occurrence," unless "the damage *for which recovery is sought* . . . extend[s] beyond the product itself." 613 N.W.2d at 262 (emphasis added).

Thus, *American Fire* did not address the situation that we face here; namely, a situation in which the plaintiff seeks recovery both for damage to the product itself and for damage to other property. Instead, like *Determan*, *American Fire* addressed a situation in which the plaintiff sought recovery only for damage to the product itself. And its holding—that a plaintiff can recover in tort for such damage, 588 N.W.2d at 439-40—was abrogated by *Determan*'s holding, one year later, that a plaintiff cannot recover in tort for such damage, 613 N.W.2d at 262. *Cf. The Conveyer Co. v. Sunsource Tech. Servs., Inc.*, 398 F. Supp. 2d 992, 1010-11 (N.D. Iowa 2005) (noting that *Determan* issued its holding "despite the existence of precedent such as *American Fire*" and following *Determan* rather than *American Fire*). *But see Determan*, 613 N.W.2d at 262 (construing *American Fire* in dicta as compatible with its holding because the fire damaged not only the truck but also its contents, apparently overlooking the fact that the plaintiff did not seek recovery for the truck's contents).

Contrary to what Floyd County Mutual claims, then, the Iowa Supreme Court has not yet decided whether a plaintiff may recover under a theory of product liability for damage to the product itself when the plaintiff also seeks recovery for damage to other property. Accordingly, "we must predict how [the Iowa Supreme

Court] would rule" if confronted with the question.[2]  *See Holbein v. TAW Enters., Inc.*, 983 F.3d 1049, 1061 (8th Cir. 2020) (en banc).  "In making our prediction, we may consider relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data," paying "particular attention to sources cited approvingly by the state's highest court."  *Id.*

We conclude that the Iowa Supreme Court would hold that the economic-loss doctrine permits recovery only for the other property and not for the product itself. The Iowa Court of Appeals has already held as much.  *Richards v. Midland Brick Sales Co.*, 551 N.W.2d 649, 651 (Iowa Ct. App. 1996) ("[L]osses in product liability cases are generally limited to physical harm to the plaintiff or physical harm to property of the plaintiff other than the product itself.").  So have other courts that the Iowa Supreme Court has "cited approvingly," *Holbein*, 983 F.3d at 1061, including the Wisconsin Court of Appeals, *Secura Ins. v. Super Prods. LLC*, 933 N.W.2d 161, 164-67 (Wis. Ct. App. 2019) (rejecting the claim that "because there was physical injury to other property, recovery for the defective product . . . becomes available in tort"), and the United States Supreme Court, *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 883-84 (1997) (permitting recovery for damage to other property but not for damage to the defective component itself or the product of which it was a part).  *See Milligan v. Ottumwa Police Dep't*, 937 N.W.2d 97, 107 (Iowa 2020) (citing the Wisconsin Court of Appeals with approval); *In re Detention of Garren*, 620 N.W.2d 275, 280 & n.1 (Iowa 2000) (treating U.S. Supreme Court

---

[2]Floyd County Mutual urges this court instead to certify the question to the Iowa Supreme Court.  But "[t]he practice of requesting certification after an adverse judgment has been entered should be discouraged.  Otherwise, the initial federal court decision will be nothing but a gamble with certification sought only after an adverse decision."  *Perkins v. Clark Equip. Co., Melrose Div.*, 823 F.2d 207, 210 (8th Cir. 1987).  Accordingly, "[w]e generally do not allow certification after a case has been decided."  *Jung v. Gen. Cas. Co. of Wis.*, 651 F.3d 796, 801 (8th Cir. 2011). Here, even though the district court's request for supplemental briefing put the parties on notice that it was considering the question, Floyd County Mutual did not request certification until after the district court's adverse judgment.  Therefore, we deny Floyd County Mutual's motion for certification.

precedent as persuasive even if not binding on a state constitutional question); *cf. Stuart v. State ex rel. Jannings*, 253 N.W.2d 910, 913 (Iowa 1977) ("[A]bsent prior pertinent decisions by this court we look to relevant holdings in other jurisdictions.").[3]

Furthermore, the Iowa Supreme Court likely would find these other courts' reasoning persuasive. Both *Secura* and *Saratoga Fishing* invoked the principle that contract law is better suited than tort law to allocate the risk that a product will lose its value by ceasing to function properly. *See Secura*, 933 N.W.2d at 164 ("By precluding tort claims, the [economic-loss] doctrine aims to protect commercial parties' freedom to allocate economic risk by contract, and to encourage the party best situated to assess the risk of economic loss, the commercial purchaser, to assume, allocate, or insure against that risk." (internal quotation marks and brackets omitted)); *Saratoga Fishing*, 520 U.S. at 879-80 ("If the buyer obtains a warranty, he will receive compensation for the product's loss, whether the product explodes or just refuses to start. . . . Given the availability of warranties, the courts should not ask tort law to perform a job that contract law might perform better."). The Iowa Supreme Court has invoked the same principle to explain why it bars recovery in

---

[3]The dissent argues that we should look to *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir. 1981), for guidance. *See post*, at 11-12. Like *American Fire*, however, *Pennsylvania Glass* was a case where the plaintiff sought recovery only for the defective product itself. *See Pa. Glass*, 652 F.2d at 1173. And, like *American Fire*'s holding, *Pennsylvania Glass*'s holding— that tort recovery may be available even "where only the defective product is damaged," *id.* at 1173, 1175—contradicts *Determan*'s holding that tort recovery is available only if the damage for which the plaintiff seeks recovery extends beyond the defective product, 613 N.W.2d at 262. *Determan* left no room for doubt that it disagreed with *Pennsylvania Glass* on this point. Immediately after citing *Pennsylvania Glass* for its test for whether a claim sounds in contract or tort, *Determan* continued: "Notwithstanding our adherence to this multi-factor test, we have required at a minimum that the damage for which recovery is sought must extend beyond the product itself." *Id.* So, we do not believe that the Iowa Supreme Court post-*Determan* would find *Pennsylvania Glass* persuasive on the question whether damage to the defective product itself is recoverable in tort.

tort for the defective product when there is no damage to other property. *See Determan*, 613 N.W.2d at 262 (discussing "whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable" and assigning to the latter the role of "protect[ing] a purchaser's expectation interest that the product received will be fit for its intended use"). Like the district court, we can think of no reason why the Iowa Supreme Court would cease to apply this principle when there is damage to other property.

Finally, we note that permitting the plaintiff to recover for damage to the product itself if but only if the plaintiff also seeks recovery for personal injury or damage to other property would result in a windfall for plaintiffs fortunate enough to incur such additional injuries. The plaintiff who suffered only $1,000,000 in damage to the defective product itself could recover nothing, but the plaintiff who also suffered $0.01 in damage to other property could recover $1,000,000.01. This would incentivize the owner of an expensive product unprotected by a warranty to ensure that the product is always attended by extra property whose sole purpose is to be destroyed in the event that a defect in the product causes "a sudden or dangerous occurrence" leading to a loss. *See id.* We doubt that the Iowa Supreme Court would embrace such a result. *See Wilson v. Farm Bureau Mut. Ins.*, 770 N.W.2d 324, 332 (Iowa 2009) (refusing to adopt a "holding [that] would amount to a windfall" for one of the parties "and would provide a[ perverse] incentive" for similarly situated parties in the future); *cf. Miss. Valley Fair v. Iowa Dep't of Revenue*, No. 67909, 1984 WL 180956, at *3 (Iowa D. Ct. Feb. 3, 1984) (noting that "the [Iowa] Supreme Court strives to avoid" statutory interpretations that would have the "absurd result" of entitling some plaintiffs to "a windfall recovery").

Thus, we conclude that the Iowa Supreme Court would bar recovery in tort for damage that a defective product causes to itself, even if the plaintiff also seeks recovery for damage to other property. This means that Floyd County Mutual's recovery is limited as a matter of law to the alleged $22,787.81 in damage to property other than the tractor. Because $22,787.81 falls short of § 1332's amount-in-

controversy requirement, the district court properly concluded that it lacked subject-matter jurisdiction over this case.

For the foregoing reasons, we deny the motion to certify a question of law to the Iowa Supreme Court and affirm the district court's dismissal of this case for lack of subject-matter jurisdiction.

STRAS, Circuit Judge, dissenting.

The rule the court applies today may be the better one, but it is not the one Iowa has adopted. In many diversity cases, we have to make an "*Erie*-educated guess." *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010). But here, there are two cases, *American Fire and Casualty Co. v. Ford Motor Co.*, 588 N.W.2d 437 (Iowa 1999) and *Determan v. Johnson*, 613 N.W.2d 259 (Iowa 2000), that tell us exactly what to do. What they say is that plaintiffs can recover in tort for a defective product when the recovery sought "extend[s] beyond the product itself." *Determan*, 613 N.W.2d at 262. We face that situation here, so I would allow Floyd County's lawsuit to remain in federal court.

I.

The main dispute between the parties is whether Floyd County can recover more than $75,000 in its lawsuit against the manufacturer of a tractor that caught fire. *See* 28 U.S.C. § 1332 (requiring an amount in controversy over $75,000 in diversity cases). According to the complaint, the damages total $167,787.81, far more than what is required for the case to be heard in federal court. But here is the catch: all but $22,787.81 is for the destruction of the tractor itself, which the manufacturer argues is not recoverable under Iowa's economic-loss doctrine.

Iowa, like many jurisdictions, has adopted an economic-loss rule. If the damages are "purely economic," a plaintiff cannot recover in tort, meaning that Floyd County's sole recourse would be a breach-of-warranty claim, not the tort

claim it alleged in its complaint. *See Des Moines Flying Serv., Inc. v. Aerial Servs., Inc.*, 880 N.W.2d 212, 218 (Iowa 2016).

In a pair of cases decided just over 20 years ago, the Iowa Supreme Court showed us exactly how the economic-loss doctrine applies in product-liability actions like this one. *See Determan*, 613 N.W.2d 259; *American Fire*, 588 N.W.2d 437. In the first case, *American Fire*, the plaintiff decided to sue only for the damage to a truck that caught fire, even though the fire damaged other property too. 588 N.W.2d at 438. The Iowa Supreme Court allowed the case to proceed anyway. *See id.* Of particular significance here, it reasoned that it had already "cast [its] lot" by allowing recovery under tort law when "harm results" from "a sudden or dangerous occurrence," as long as the cause of the harm is a "genuine hazard in the nature of the product defect." *Id.* at 438–39 (quotation omitted); *see also Des Moines Flying Service*, 880 N.W.2d at 219 (discussing the rule from *American Fire*, including how to differentiate between tort and contract actions).

The second case, *Determan*, modified the *American Fire* rule, but not in the way the court thinks. Far from completely "abrogat[ing]" a rule that it had adopted just 17 months earlier, the Iowa Supreme Court used the "framework" established in *American Fire* to, in its own words, "guide [its] analysis." *Determan*, 613 N.W.2d at 262–63; *see also Des Moines Flying Serv.*, 880 N.W.2d at 219 (continuing to discuss and apply the rule from *American Fire* when discussing how the economic-loss doctrine works). *Determan* simply added the proviso that, "at a *minimum*," "the damage for which the recovery is sought must extend beyond the product itself." 613 N.W.2d at 262 (emphasis added). To synthesize, a tort recovery is available in a products-liability action when there has been "a sudden or accidental occurrence" *and* the recovery sought "extend[s] beyond the [defective] product itself." *Id.* at 262, 264 (quotation omitted); *Des Moines Flying Service*, 880 N.W.2d at 219 (explaining that, "if the damage resulted from a failure of the product to work properly, the claim would sound in contract, but if it resulted from a genuine hazard resulting in a sudden or dangerous occurrence based on the nature of the product defect, the claim would sound in tort.")

Both of those conditions are met here. First, a "sudden or accidental occurrence" caused the harm. *Determan*, 613 N.W.2d at 262. In *American Fire*, a truck spontaneously caught fire. 588 N.W.2d at 438; *cf. Determan*, 613 N.W.2d at 263 (involving a *slow* and *steady* decline in the structural integrity of a home from building defects). Here, the exact same thing happened, except the vehicle happened to be a tractor. Second, consistent with *Determan*'s proviso, Floyd County is trying to recover for more than just the harm to "the [defective] product itself." 613 N.W.2d at 262. Neither *American Fire* nor *Determan* requires anything more, the result of which is that the alleged damage to the tractor itself pushes the amount in controversy well above the $75,000 jurisdictional minimum. *See* 28 U.S.C. § 1332.

## II.

I would end the analysis there. The court, however, goes on to analyze three other cases that the Iowa Supreme Court has scarcely mentioned, much less endorsed. *See Saratoga Fishing Co. v. J. M. Martinac & Co.*, 520 U.S. 875, 883–84 (1997) (applying the economic-loss doctrine in an admiralty case); *Secura Ins. v. Super Prods. LLC*, 933 N.W.2d 161 (Wis. Ct. App. 2019) (stating that, in contrast to Iowa law, "it is of *no import* that the damage was abrupt and accidental" (emphasis added)); *Richards v. Midland Brick Sales Co.*, 551 N.W.2d 649, 651 (Iowa Ct. App. 1996) (discussing the economic-loss doctrine before *American Fire* and *Determan* were decided); *see also East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 869–870 (1986) (concluding that a multi-factor approach to differentiating between tort and contract, like Iowa's, is "unsatisfactory"). In doing so, it ignores the one case that played a prominent role in the development of Iowa's economic-loss doctrine, *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir. 1981).

*Pennsylvania Glass* influenced Iowa law in several ways. First, Iowa's sudden-or-dangerous-occurrence exception to the economic-loss doctrine came from *Pennsylvania Glass*. *American Fire*, 588 N.W.2d at 439–40. Second,

*Determan* (and other cases) used it as the basis for adopting a multi-factor test for determining whether a claim sounds in contract or tort. *See Determan*, 613 N.W.2d at 262; *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 124–25 (Iowa 1988). Third, and perhaps most importantly, *Pennsylvania Glass* recognized that "claims for damage to the defective product [itself] may by cognizable in tort law," which is now also the rule in Iowa. *See* 652 F.2d at 1174–75. I would apply that rule and respectfully dissent from the court's decision going the other way.

———————————————————