# IN THE COURT OF APPEALS OF IOWA

No. 25-0326
Filed March 11, 2026

**Jay Straight and Lori Straight,**
Plaintiffs–Appellants,

v.

**Hagie Manufacturing Company, LLC,**
Defendant–Appellee.

Appeal from the Iowa District Court for Harrison County,
The Honorable Jennifer Benson Bahr, Judge.

**AFFIRMED**

James W. Russell (argued) of Wickham & Geadelmann, P.L.L.C., West Des Moines, attorney for appellants.

Dana W. Hempy (argued) and Katie L. Graham of Nyemaster Goode, P.C., Des Moines, attorneys for appellee.

Heard at oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Greer, P.J.

1

**GREER, Presiding Judge.**

Jay and Lori Straight (the Straights) appeal from a district court order granting summary judgment in favor of Hagie Manufacturing Company, LLC (Hagie). The Straights argue the district court incorrectly concluded that the economic loss doctrine barred their claims. On our review, we determine that the economic loss doctrine applies as the Straights' remedy lies in contract, so we affirm.

## I. Background Facts and Proceedings.

The Straights are farmers in Harrison County. In December 2015, the Straights purchased a used Hagie 2014 STS12 Model Sprayer (the sprayer) with its sprayer booms for use in their farming operation. The sprayer is a large, four-wheeled machine with a 1,000-gallon tank to store chemicals. The Straights used the sprayer to spray herbicides, fungicides, and insecticides on their fields.

The sprayer was manufactured in 2014 and came with a warranty "for a period of lesser of: two (2) years or 1000 hours from the date of delivery." The warranty was transferable to subsequent purchasers if there was still time remaining on the warranty. The warranty expressly disclaimed liability "for damages, including special, incidental or consequential damages or injuries (damage and repairs of equipment itself, loss of profits, rental or substitute equipment, loss of good will, etc.) arising out of or in connection with performance of the equipment or its use by the customer." The Straights did not purchase an extended warranty.

The Straights received the sprayer sometime in early 2016. The warranty was in effect until April 28, 2016.

In June 2018, Hagie issued a product improvement program (PIP) letter for the sprayer regarding its outer leg weldments. The letter informed customers that Hagie had "identified a potential safety issue with [the sprayer]. Cracking may occur on the front outer leg weldments where the outer leg inserts into the mainframe of the machine. Failure to inspect and/or repair may result in leg failure and damage to the machine."

Hagie sent these PIP letters to customers, recommending they have their sprayers inspected and, if needed, repaired. Customers could have their sprayers repaired at Hagie's cost, even if their machine was outside the warranty period.

In July 2018, the Straights had work done on the sprayer. Hagie asserts that this work was done in accordance with the PIP. The Straights dispute receiving the PIP letter or having work done on the sprayer in accordance with the PIP.

In August 2019, Hagie issued an updated PIP letter for the sprayer's outer legs. This letter instructed customers to "contact your dealer to have the front legs replaced" and to inspect the legs daily until they could be replaced. The Straights dispute that they received this letter. It is undisputed, however, that the Straights did not have the sprayer's legs replaced in accordance with this PIP prior to the incident at issue in this case.

In the spring or early summer of 2020,[1] the Straights' son, Jackson, was operating the sprayer in a field when the front axle broke. According to Jackson, the sprayer "popped" and fell to the ground. Jackson was not injured. There was no damage to the sprayer's chemical tank, although some

---

[1] The parties do not agree on the exact incident date, but the date of the incident is not relevant to our analysis.

of the chemicals did continue to run down the sprayer's booms until Jackson could turn the sprayer off. The Straights disposed of the chemicals remaining in the sprayer's tank.

On August 10, 2023, the Straights filed their petition bringing negligent failure to warn, manufacturing defect, design defect, and negligence claims against Hagie. The Straights sought damages for the sprayer itself, the chemicals in the sprayer at the time, and for loss-of-use damages for the period of time the sprayer was being repaired.

Hagie denied the Straights' claims and asserted, as an affirmative defense, that the Straights' claims were barred by the economic loss doctrine. On October 7, 2024, Hagie filed a motion for summary judgment, arguing that the economic loss doctrine barred all of the Straights' claims.

On January 6, 2025, after a hearing, the district court granted summary judgment in favor of Hagie on three of the four claims in the Straights' petition. The court concluded that the economic loss doctrine barred all claims except for the Straights' failure-to-warn claim. The court also concluded the Straights could seek damages for the cost of their lost chemicals.

Hagie filed a motion to reconsider, which the Straights resisted. On January 28, after a hearing, the court granted Hagie's motion, dismissing all of the Straights' claims, including their claims for damages based on the loss of chemicals from the sprayer and from the failure to warn. The Straights appeal.

## II. Standard of Review.

We review summary judgment rulings for "correction of errors of law." *Hollingshead v. DC Misfits, LLC*, 937 N.W.2d 616, 618 (Iowa 2020). "Summary judgment is appropriate only when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019). "We review the facts in the record in the light most favorable to the nonmoving party and draw every legitimate inference in favor of the nonmoving party." *Hollingshead*, 937 N.W.2d at 618 (cleaned up). A legitimate inference is "rational, reasonable, and otherwise permissible under the governing substantive law." *Peak v. Adams*, 799 N.W.2d 535, 543 (Iowa 2011) (citation omitted).

The moving party "has the burden of showing the absence of a genuine issue of material fact." *Hollingshead*, 937 N.W.2d at 618 (citation omitted). There is a genuine issue of fact "if reasonable minds can differ on how an issue should be resolved." *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018) (citation omitted). A material fact is one that "might affect the outcome of a lawsuit." *Id.*

## III. Analysis.

On appeal, the Straights assert this is a case of first impression as to how our courts should apply the economic loss doctrine. They contend the economic loss doctrine does not apply to their claims, and the district court incorrectly granted summary judgment in Hagie's favor. According to the Straights, the sprayer's axle breaking was a "sudden and dangerous occurrence." For that reason, they claim they can bring tort claims seeking damages for the sprayer itself and attached booms as well as the chemicals

inside the sprayer, which they claim are "other property." From Hagie's perspective, the economic loss doctrine applies and Straights only have contractual remedies. On our review, we conclude the district court properly granted summary judgment in Hagie's favor.

**A. Economic Loss Doctrine.**[2] "The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984). Put another way, "a plaintiff cannot maintain a claim for purely economic damages arising out of a defendant's alleged negligence." *Determan v. Johnson*, 613 N.W.2d 259, 261 (Iowa 2000) (cleaned up).

Our supreme court has refined the general rule to differentiate between contract and tort. "[T]he line to be drawn is one between tort and contract rather than between physical harm and economic loss." *Id.* at 262 (citation omitted). "When . . . the loss relates to a consumer or user's disappointed expectations due to deterioration, internal breakdown or non-accidental cause, the remedy lies in contract." *Id.* (citation omitted); *see also* Restatement (Third) of Torts: Liab. for Econ. Harm § 3 cmt. *a* (A.L.I. 2020) ("A buyer of a product disappointed by its performance cannot sue its maker in tort for negligence. Courts have long recognized that the law of warranty is better suited than the law of tort to address such cases, and that

---

[2] Iowa's application of the economic loss doctrine has been described by some authors as an "intermediate rule." *See* Jeffrey L. Goodman, Daniel R. Peacock & Kevin J. Rutan, *A Guide to Understanding the Economic Loss Doctrine*, 67 Drake L. Rev. 1, 27 (2019) ("While it operates in a manner substantially similar to the majority rule—in that it bars recovery of economic loss in tort in most circumstances—it is different in that its application of the economic loss doctrine is not absolute.").

contracts between the parties determine the allocation of economic losses that arise from the transaction."). "Tort theory, on the other hand, is generally appropriate when the harm is a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect." *Determan*, 613 N.W.2d at 262 (citation omitted).

"The line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose." *Id.* (cleaned up). However, "[n]otwithstanding our adherence to this multi-factor test, we have required at a minimum that the damage for which recovery is sought must extend beyond the product itself." *Id.* On this point, Hagie asserts that the inquiry ends here because the damage did not extend beyond the sprayer.

So, we turn to our case law for guidance. Iowa courts have considered whether the economic loss doctrine applies in a variety of cases. The Straights allege that their claim is most similar to *American Fire & Casualty Co. v. Ford Motor Co.*, 588 N.W.2d 437, 438 (Iowa 1999). At oral argument, Straights characterized the core issue as whether *American Fire* is still good law or whether *Determan* abrogated its holding. We do not find the analysis to be so simple. In *American Fire*, a pickup "truck caught fire causing property damage to the truck and its contents." *Id.* at 438. The truck owner's insurance company, as subrogee for the truck owner, sued the truck manufacturer in tort. *Id.* The manufacturer filed a motion to dismiss based on the economic loss doctrine, which was granted. *Id.* The subrogee appealed. On appeal, our supreme court reversed, concluding that the economic loss doctrine did not bar the subrogee's tort claims seeking damages for the truck as well as its contents. *Id.* at 439–40. The court noted

7

that prior cases in which the economic loss doctrine applied involved only "the loss of the benefit of [the] bargain" and had a "lack of danger created by the defective product." *Id.* at 439. Because fire was a "sudden and highly dangerous occurrence," the economic loss doctrine did not apply to bar the subrogee's tort claims for damages for the truck and its contents. *Id.* at 440.

Hagie asserts that the Straights' claim is most similar to *Determan* in which the economic loss doctrine barred the plaintiff's tort claims. 613 N.W.2d at 263–64. In *Determan*, a home purchaser sued the prior owners—who built the home—for damages after the purchaser discovered serious structural issues with the home. *Id.* at 263. "Specifically, the structural support for the roof was woefully inadequate and the moisture barrier in the walls had been improperly installed." *Id.* Given the significant structural issues with the home, the purchaser's experts testified that it was possible the home's roof would collapse, but the roof had not collapsed at the time of the lawsuit. *Id.* The purchaser sued the prior owners, "seeking recovery under several different negligence theories." *Id.* at 261. The purchaser sought damages for "expenses she has and will incur to repair the defects in the home's construction." *Id.* at 263.

Our supreme court, in concluding the economic loss doctrine applied to the purchaser's claims, noted, "Although these defects present a genuine safety hazard to persons and property, that risk has not come to pass." *Id.* The court looked to the recovery requested—repair of the defective construction—and determined that the requested damages were not due to a "sudden or dangerous occurrence," instead "the plaintiff's damages result from the deterioration of the house due to its poor construction." *Id.* Because "the plaintiff's claim is based on her unfulfilled expectations with respect to the quality of the home she purchased," the court determined that

her remedy was in contract law and the economic loss doctrine applied to her tort claims. *Id.*

We find this case to be more like *Determan* than *American Fire*. Here, the sprayer's axle "popped" and broke. The Straights do not allege that the sprayer collided with an external object, nor was Jackson injured. When asked in his deposition, Jackson, who was the only person in the sprayer at the time of the failure, stated that "I was coming down the hill, and it just popped." No one described the incident as violent, and the broken axle did not cause any personal injury or damage to property beyond the sprayer itself as only the sprayer cab, axle, and booms required repair. Based on the description of the axle breaking, and considering the PIP letters, it appears the axle broke due to "deterioration," "internal breakdown," or some other "non-accidental cause." In our view, the Straights seek damages for their unfulfilled expectations resulting from the sprayer breaking down. *See Am. Fire*, 588 N.W.2d at 439 ("[C]ontract law protects a purchaser's expectation interest that the product will be fit for its intended use.").

Although the Straights, in their briefing and at oral argument, emphasize that the axle failure was a violent, sudden, and dangerous occurrence, that characterization alone is not determinative. *See Conveyor Co. v. SunSource Tech. Servs., Inc.*, 398 F. Supp. 2d 992, 1011 (N.D. Iowa 2005) (finding "no suggestion in Iowa cases that a 'sudden or dangerous occurrence,' standing alone, will transform what is otherwise a contract or breach of warranty claim into a strict products liability claim, in the absence of personal injury or property damage extending beyond damage to the product itself"); *see also Ziel v. Energy Panel Structures, Inc.*, No. 19-0508, 2020 WL 4498064, at *5 (Iowa Ct. App. Aug. 5, 2020) (finding hazardous

nature of a building collapse did not provide an exception to the economic loss doctrine).

We instead consider not only the type of risk, but also the nature of the defect, the manner in which injury occurred, and the types of damages to be recovered. *See Determan*, 613 N.W.2d at 263; *see also Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 506 (Iowa 2011) (applying the four factors together). Here, the nature of the defect claimed was improper welding and a faulty front axle, the risk involved a possibility of a malfunction or breakdown, and the damages requested were for the repair of the sprayer and its components—all related to economic losses. Likewise, the Straights did not meet the threshold requirement "at a minimum . . . the damage for which recovery is sought must extend beyond the product itself." *See Determan*, 613 N.W.2d at 262. Thus, Straights remedy lies in contract, not tort.

We therefore determine that the Straights' claims are covered by the economic loss doctrine. *See Van Sickle Constr. Co. v. Wachovia Com. Mortg., Inc.*, 783 N.W.2d 684, 693 (Iowa 2010) ("The rationale for this limitation on recovery is that purely economic losses usually result from the breach of a contract and should ordinarily be compensable in contract actions, not tort actions." (cleaned up)). For that reason, the district court properly granted summary judgment in favor of Hagie.

**B. Other Property.** Finally, we address the Straights' claim that the chemicals in the sprayer constitute "other property" that was damaged when the sprayer broke. Jackson's father, Jay Straight, testified in his deposition that the chemicals escaped the sprayer through a boom damaged in the breakdown and the chemicals that remained in the sprayer tank were no longer useable. To make that determination, we look to the cases applying the economic loss doctrine.

10

In *Determan*, the court considered the entire home rather than its component parts. 613 N.W.2d at 263–64. For example, the sagging roof and improperly installed moisture barrier caused damage to the walls and ceilings of the home. *Id.* The court did not consider the sagging roof separately from the moisture barrier separately from the damaged ceilings and walls. *Id.* Importantly, the court did not find that the damaged ceiling and walls constituted "other property." *Id.* at 264.

Conversely, *American Fire* permitted recovery for the truck as well as its contents. 588 N.W.2d at 439–40. A vehicle's contents, such as the owner's personal property, are not part of the truck itself. Without the contents, the truck still functions as intended. Because the contents were not part of the truck itself, they constituted other property for which the plaintiff could seek damages. *Id.*

Turning to the facts of this case, we conclude that the chemicals in the sprayer do not constitute other property or transform the Straights' contract claims into tort claims. The chemicals were part of the sprayer as a fully integrated system. *See* Restatement (Third) of Torts: Prods. Liab. § 21 cmt. e (A.L.I. 1998) ("When the product or system is deemed to be an integrated whole, courts treat such damage as harm to the product itself. When so characterized, the damage is excluded from the coverage of this Restatement. A contrary holding would require a finding of property damage in virtually every case in which a product harms itself and would prevent contractual rules from serving their legitimate function in governing commercial transactions."). The core function of the sprayer is to spray chemicals on fields. Without the chemicals, the sprayer would not function as intended. Because the chemicals in the sprayer's chemical tank are an integral part of

11

the sprayer, the Straights' claim for damages does not extend beyond the sprayer itself.

### IV. Conclusion.

Because the Straights' claims are barred by the economic loss doctrine, we find no error of law in the district court's summary judgment ruling and therefore affirm.

**AFFIRMED.**